United States *v.* Morganite Brush Co. (No. 3178)[1]

[1] T. D. 44063.

United States Court of Customs and Patent Appeals, May 19, 1930

*Charles D. Lawrence*, Assistant Attorney General (*J. G. Lerch*, special attorney of counsel), for the United States.

*Comstock & Washburn* (*George J. Puckhafer* of counsel) for appellee.

[Oral argument April 16, 1930, by Mr. Lerch and Mr. Puckhafer]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This is a Government appeal from the judgment of Division Two of the United States Customs Court sitting in reappraisement.

The merchandise consists of carbon blocks made of carbon, carbon and graphite, or carbon, graphite, and copper, imported in block form in sizes varying from that of a domino to that of a common brick, said blocks being used for the purpose of manufacture into what is known as carbon brushes for use in electrical machinery. The importation involved in this lawsuit is made up of a great number of different kinds of blocks, possessing somewhat different textures and qualities, each composition bearing its own quality number. By far the greater portion of the blocks in this importation, as well as in the entire business between the importer and the English manufacturer, consists of blocks which are in the form of material to be cut up by machinery after importation into smaller pieces which are then smoothed, ground, and sized for their use as brushes. The grinding and sizing must be done with great accuracy so as to allow only such tolerances as will produce a proper fit. Some of the instant importation consists of blocks which are not cut into more than one brush, but which are unfinished and are not brushes but material for the making of brushes.

The record shows that the Morgan Crucible Co., the English manufacturer, shipper, is the majority stockholder of the Morganite Brush Co., appellee. The record further shows, and Justice Young, the appraising justice, found that no part of the merchandise involved in this suit is sold in the foreign markets in its condition as imported, nor is it sold in the United States in its imported condition.

Among the different quality numbers in the importation was one known as EG–3. These blocks, designated by this quality number, were not recut in this country for the purpose of making more than one brush, but further grinding and finishing of the same was required.

The EG–3 blocks were appraised by the appraiser on the basis of foreign value as defined by section 402 (b) of the Tariff Act of 1922. The remaining portion of the merchandise was appraised upon the basis of the United States value as defined by section 402 (d) of the same act. In the appraisement of EG–3, the appraiser followed the decision of Chief Justice Howell in Reappraisement Circular 35395, the record in which case was introduced before the single appraising justice in the instant case. The importer appealed from the appraisement of the appraiser and the cause was tried before Justice Young, who reappraised the merchandise on the same basis as the appraisement of the appraiser, with certain modifications. Upon petition for review, Division Two reversed the single justice and found values based upon the cost of production.

Here follow the pertinent portions of section 402:

SEC. 402. VALUE.—(a) For the purposes of this Act the value of imported merchandise shall be—

(1) The foreign value or the export value, whichever is higher;

(2) If neither the foreign value nor the export value can be ascertained to the satisfaction of the appraising officers, then the United States value;

(3) If neither the foreign value, the export value, nor the United States value can be ascertained to the satisfaction of the appraising officers, then the cost of production;

    \*        \*        \*        \*        \*        \*        \*

(b) The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which *such or similar merchandise* is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

    \*        \*        \*        \*        \*        \*        \*

(d) The United States value of imported merchandise shall be the price at which *such or similar imported merchandise* is freely offered for sale, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

(e) For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind. [Italics ours.]

\*     \*     \*     \*     .\*     \*     \*

The findings of fact and conclusions of law by Division Two of the court below are as follows:

1. That the merchandise consists of carbon blocks, so-called, made in England, and sold by the manufacturer exclusively to one importer in the United States at a price which is equivalent to the cost of production with a profit added of 17.7 per centum.

2. That "such merchandise" is not sold either in this country or in the country of exportation, nor is there any "similar merchandise," within the meaning of the statute, sold here or in the country of exportation.

3. That the invoice prices represent the cost of production of these goods, within the definition of such cost given in section 402 (e), paragraphs 1, 2, 3, and 4.

We therefore hold as matter of law:

1. That the merchandise under reappraisement is not similar to carbon brushes for value purposes.

2. That the decision below is in error (1) in holding these blocks to be similar to carbon brushes and (2) in adopting an improper method for computing the value.

3. That the correct dutiable value of the merchandise is the invoice value thereof, which is the cost of production with profit added, as set forth in section 402 (e) of the Tariff Act of 1922.

4. That the decision appealed from be reversed in all respects.

Judgment order will be entered accordingly.

The Government states the issue to be as follows:

The questions in this case are:

Whether the imported merchandise is such as or similar to (within the meaning of section 402 (d)) the finished blocks sold in the United States during the period under consideration.

Whether there is substantial evidence to support the findings made by the court below.

Whether, under all the facts in the case, the cost of production as defined in section 402 (e), or United States value as defined in section 402 (d), applies.

Whether the court below erred in adding for profit 17.7 per centum, whereas the record shows that prior to June, 1924, a profit of only 12.7 per centum was earned.

It is admitted that there is no export value since it is a controlled sale made to but one customer in the United States who acts as the agent for the English manufacturer, the American agency company being chiefly owned by the English manufacturer.

It would seem that the chief issue ·in this case is whether or not the merchandise imported is either "such or similar" merchandise as that sold for home consumption in England or whether the imported

merchandise is "such or similar" merchandise as is "freely offered for sale," etc., in the United States. Justice Young found that the imported merchandise, although in an unfinished condition and not sold in that condition, was similar merchandise, for the purposes of appraisement, to the finished brush sold in this country and said:

I am convinced that any merchandise should be regarded as similar, for appraisement purposes, which furnishes a market basis that can be intelligently, helpfully, and fairly used to ascertain or estimate the value of imported merchandise.

The learned appraising justice also found:

That the merchandise freely offered for sale in the United States and England is similar in all material respects as to quality, character, and use to that imported in the importations in question.

* * * * * * *

That such or similar merchandise to all of the merchandise, the subject of the importations in the case at bar, is freely offered for sale in the principal market of the United States to all purchasers in the usual wholesale quantities and in the ordinary course of trade.

Justice Young, after finding the imported merchandise to be similar to that sold in the United States as brushes, made a specific finding as follows:

That an allowance of 6 per centum would definitely and accurately represent the cost of grinding or finishing the merchandise in the United States or England.

At the time Justice Young rendered his decision, this court had not decided the cases of *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T. D. 42714; *United States* v. *Wecker & Co.*, 16 Ct. Cust. Appls. 220, T. D. 42837; and *United States* v. *F. Vietor & Achelis*, 17 C. C. P. A. 412, T. D. 43864. The appellate division of the court below, in reversing Justice Young, called attention to the above decisions of this court last cited, and said:

Whatever might have been our opinion were the present issues submitted as an original proposition, it is now perfectly clear that the ruling of Justice Young is irreconcilable with decisions subsequently rendered by the United States Court of Customs Appeals on what constitutes similar merchandise.

*United States* v. *Massin*, 16 Ct. Cust. Appls. 19, T. D. 42714, involved the question whether certain hatters' plush of silk and cotton was similiar for value purposes to other hatters' plush. The court through Presiding Judge Graham, said:

In view of the common meaning of the word "similar" and of the authorities cited, we are of opinion, and so hold, that if goods are made of approximately the same materials, are commercially interchangeable, are adapted to substantially the same uses, and are so used, ordinarily they are similar, within the meaning of section 402 (b). * * *

It may be said in this connection that the statute plainly provides that the dutiable value of the imported goods shall be fixed at the market value or price of such or similar goods offered for sale abroad. It can not, therefore, be fixed by comparison, by taking some proportionate part of the foreign value of comparable goods of different grade or value. It must be *the value or price of such* or *similar goods.* [Italics quoted.]

It will be seen that Justice Young, by regarding the merchandise as "similar" and adding 6 per centum difference in value, owing to the further processing in the United States, which holding was consistent with the decisions of his court at that time, fell into the error pointed out in the *Massin* case, *supra;* that is to say, he appraised the importation upon the *basis* of its value after it had been further processed. The statute says nothing about appraising goods on the basis of other goods but directs that the appraiser, in applying the United States value, shall adopt "the price at which such or similar imported merchandise is freely offered for sale," etc.

We agree with the views expressed by the appellate division of the court below and, for the reasons assigned in the cases cited, hold that there is substantial evidence in the record to support its conclusion that the carbon blocks at bar are not "such or similar" merchandise as that "freely offered for sale" for home consumption in England and are not "such or similar" merchandise as that "freely offered for sale" in the principal market of the United States, etc.

The Government in this court urges that *Knott* v. *United States*, 9 Ct. Cust. Appls. 93, T. D. 37948, and *United States* v. *Downing*, 201 U. S. 354, are authority for holding that the carbon brushes sold in the United States are similar to the carbon blocks at bar. It is needless to discuss these cases at length. They involve the question of similarity for dutiable purposes which is a very different proposition from the question of similarity for value purposes. The other cases cited by the Government on the question of similarity are not regarded as being in point.

The Government urges that there is no substantial evidence to support the finding of the court below, that the cost of production is properly shown, inasmuch as the court's finding of the cost of production included in such cost an added profit of 17.7 per centum, whereas the record discloses that on invoices covering exportations prior to May 24, the profit added amounts to 12.7 per centum and not to 17.7 per centum. It seems that the Government, although wanting a higher appraised value than it obtained by the judgment of the court below, complains of the fact that 17.7 per centum was added rather than 12.7 per centum. In the Government's eleventh assignment of error is found the following:

In deducting for profit 17.7 per centum whereas counsel for the importer in open court admitted a lower rate of profit for a period covering a large number of the appeals in question.

Under the pertinent provision of section 402 with reference to the cost of production, it is provided that profit will be *added*, and not deducted. As the court below added 17.7 per centum for profit in determining the cost of production instead of 12.7 per centum, it is

hardly a matter for complaint on the part of the Government, and the importer in its brief before us states:

> However, if the court be of the view that the profit figure of 17.7 per centum ascertained in May, 1924, should have been used in the calculation of the cost of production of those shipments exported prior thereto, the appellee herein in order to bring this long litigation to a close, consents to the entry of an order to the effect that the cost of production of the merchandise on all invoices dated prior to May 16, 1924, covered by this appeal to be invoice value plus five per cent.
>
> Precedent for such disposition is found in the case of *United States* v. *Wiener* 15 Ct. Cust. Appls., 428.
>
> The language of appellants' eleventh assignment of error on this point is not happily chosen, the language of the assignment reading:
>
> "In not deducting for profit 17.7 per centum whereas counsel for the importer in open court admitted a lower rate of profit for a period covering a large number of the appeals in question."
>
> In determining cost of production profit is *added* not *deducted*. The eleventh assignment of error, therefore, does not save appellants' rights upon this point. [Italics quoted.]

We conclude that appellant's eleventh assignment assigns no reversible error.

The record in the instant case consists of approximately 600 pages. The court below has gone into it carefully and we have reexamined it in detail. No useful purpose would be served by an attempt to quote any portion of the same which we regard as supporting the conclusion reached by the court below, and we content ourselves with saying that there is substantial evidence in the record to support every material portion of the decision of the court below and, thereore, its judgment is *affirmed*.