UNITED STATES *v.* HENRY MAIER (No. 3509)[1]

[1] T. D. 46378.

United States Court of Customs and Patent Appeals, April 12, 1933

*Charles D. Lawrence*, Assistant Attorney General (*Hugo P. Geisler*, special attorney, of counsel), for the United States.

*Brooks & Brooks* (*Frederick W. Brooks, jr.*, and *Ernest F. A. Place* of counsel) for appellee.

[Oral argument February 9, 1933, by Mr. Geisler and Mr. Place]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division, in a reappraisement proceeding under the Tariff Act of 1922. The case was before us in our October, 1930, term, and in a decision rendered on March 2, 1931, the judgment there on appeal was reversed and the case was remanded "for a rehearing on the merits." *United States* v. *Henry Maier*, 18 C. C. P. A. (Customs) 409, T. D. 44679.

The merchandise involved is certain undyed velvet, or velvet in the gray, of which two entries were made by the appellee at the port of New York. The importer, the appellee here, appealed from the appraisement of the local appraiser in each instance. The appeals were consolidated and the trial judge, on reappraisement, found that the cost of production of the merchandise in question was $1.23 per yard. A motion for rehearing was granted, and further proceedings were had, as a result of which the trial judge found the cost of production of the merchandise to be $1.50 per yard, and appraised the merchandise accordingly. Thereupon both parties appealed to the division for a review.

The First Division of the Customs Court found that there was no foreign, export, or United States value of the merchandise involved, and that the proper dutiable value was the cost of production under the provisions of section 402 (e) of said Tariff Act of 1922, which the court found was 7.92 reichsmarks per yard. On January 21, 1930, judgment was entered in accordance with such finding. On the same day appellee made a motion for rehearing, which motion was overruled on March 27, 1930. On April 4, 1930, without notice to either of the parties, the court modified its former opinion and judgment by correcting what it claimed were clerical errors therein, with the

result that an amended judgment was entered appraising the merchandise involved at 5.756 reichsmarks per yard.

From that judgment the Government appealed to this court, raising the question of jurisdiction of the lower court to enter said amended judgment, and also assigning error on the finding of value on the record.

In our decision the court, speaking through Presiding Judge Graham, held that the amended judgment was not merely the correction of a clerical error, but that it involved a matter of substance, and that under the facts shown in the record the lower court was without authority to enter said amended judgment.

We also found that, in arriving at the cost of production, the lower court had not followed the provisions of said section 402 (e) of said Tariff Act of 1922 with respect to allowances for general expenses and profit, and also found that error had been committed with respect to computations converting Swiss francs into German reichsmarks.

Because of the errors noted in the opinion, the judgment of the Customs Court was reversed and the cause was remanded "for a rehearing on the merits."

With respect to this remand, when the case was reached by the First Division upon its docket, the Government contended that our order should be construed as a remand for a new trial before the single judge sitting in reappraisement, and requested that the case be remanded to the single judge for that purpose. Appellee contended that our order should be construed as an order for reargument upon the record before the court.

The Government's request for a remand of the case for a new trial before the single judge was denied by the court, and thereupon the case was reargued by counsel upon the record before it.

The court thereupon rendered a decision finding the cost of production of the merchandise involved to be 6.32 reichsmarks per meter, which is equivalent to 5.793 reichsmarks per yard, and entered judgment accordingly.

Judge McClelland dissented from the decision of the court upon the ground that, in his opinion, our remand for a rehearing upon the merits should be construed as a direction for a new trial before the single judge.

From the judgment entered as aforesaid the Government took this appeal.

In the Government's petition for review we find 45 assignments of error. These may be divided into two groups for the purpose of our decision, to wit:

1. That the First Division of the Customs Court erred in not remanding the cause to the single judge for a new trial.

2. That there is no substantial evidence in the record, especially with respect to additions for general expenses and profit, to support the judgment appealed from.

With respect to remanding the cause to the single judge for a new trial, there was no error in denying the request of the Government. Our order in the previous hearing remanded the case to the Customs Court, sitting as a reviewing court, for a "rehearing on the merits." Had the remand been for the purpose of a new trial we would, in accordance with our practice, have so indicated in our order, as we did in the case of *United States* v. *Tidewater Oil Co.*, 19 C. C. P. A. (Customs) 392, T. D. 45554, and cases there cited.

The reason for our remand for a "rehearing on the merits" was that, in addition to finding error in the decision before us with respect to the conversion of Swiss francs into German reichsmarks, we also found error in the method pursued by the lower court in arriving at the cost of production. We therefore remanded the case for a rehearing upon the merits as they were disclosed by the record before the court.

With respect to the question of whether the record contains substantial evidence supporting the judgment appealed from, we have had great difficulty in coming to a conclusion. However, in one respect, appellee concedes error of the lower court in not including in the cost of production certain Schappe silk selvedge, the material and labor cost of which, it is agreed by the Government and appellee's counsel, was 12 Swiss francs per hundred meters. This fact is also established by the record. Upon this point the Government specifically assigned error; therefore the judgment of the court below must be reversed, even though there be substantial evidence in the record supporting the findings of the court below as to percentage allowances for general expenses and profit.

Said section 402 (e) of the Tariff Act of 1922 reads as follows:

Sec. 402. (e) For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

In arriving at the cost of production, the court added for general expenses a sum equal to 22.72 per centum of the amount it found to be the cost of material and labor in the production of the merchandise in question, and then added an amount equal to 8 per centum of the combined amounts found for material and labor cost and general expenses.

In arriving at these percentages the court relied upon a report of a special agent of the Government, introduced in evidence, and quoted therefrom in its decision as follows:

General expense and profit. The managing director exhibited to me a statement showing that his company's general expenses for the year 1928 had been $22^{72}/_{100}$ per centum of that year's total turn-over, amounting to nearly two million reichsmarks. Their profit he said was only 8 per centum.

While the $22^{72}/_{100}$ per centum for general expenses is undoubtedly correct, the percentage of 8 per centum for profit was not accepted.

Following this quotation the court said:

This is the only evidence in the record concerning the general expenses of manufacturing these gray goods or of any alleged similar goods manufactured and sold in the gray.

That amount, $22^{72}/_{100}$ per centum, as found before, must stand. There is absolutely nothing against it in the record. (Italics quoted.)

The court, however, applied this 22.72 per centum to the amount which it found to be the material and labor cost of the merchandise, viz, 581.17 Swiss francs, and by this means arrived at an addition thereto of 132.04 Swiss francs for general expenses, whereas the quotation from the report of the special agent refers to 22.72 per centum of the year's total turn-over upon all classes of goods manufactured, amounting to about 2,000,000 reichsmarks, as covering general expenses. Obviously, 22.72 per centum of the selling price of merchandise, which includes general expense and profit, is more than 22.72 per centum of the material and labor cost of the merchandise. Therefore, if the general expenses of a manufacturer in all of his business is the test to be applied here, the lower court was in error in adding only 22.72 per centum of the material and labor cost of the merchandise.

Section 402 (e), *supra*, however, provides in paragraph 2 that there shall be included in the cost of production "The usual general expenses (not less than 10 per centum of such cost) in the case of *such or similar* merchandise." (Italics ours.) Therefore, the general expenses to be added are not a percentage of the total turnover of all goods sold by a manufacturer, but the usual general expenses incurred in the production of "such or similar merchandise."

There is evidence in the record that there was no "such or similar" merchandise sold in Germany, and it is conceded by both parties hereto that there was neither a foreign nor an export value of the merchandise here in question. In the report of said special agent

there is included an exhibit which contains a statement from the managing director of the manufacturer of the merchandise here involved, to the effect that the manufacturer's general expense in producing these goods was 22.72 per centum of their material and labor cost. In these circumstances, we think this is some substantial evidence sustaining the finding of the lower court upon this point.

We next come to the question of profit. In determining the profit to be added, the lower court added to the amount which it found to be the material and labor cost, plus the amount added for general expenses, a sum equal to 8 per centum of these two items, and the Government assigns error as to this finding.

Here again the court took as the basis of its finding the said report of the special agent, as hereinbefore quoted, stating that the profit of the manufacturer of the merchandise here in question was stated by its managing director to be 8 per centum. We take it that this means 8 per centum of the total turn-over, although this is not directly stated.

In the decision of the lower court we find the following:

We added 8 per centum for profit. The shipper's managing director testified to the special agent that was all the profit he made.

This is the only evidence in the record on the subject. The loose and general statements in the special agents' reports that 50 per centum for overhead *and* profit was permitted to be or usually charged by members of the syndicate, with a minimum requirement of 42 per centum, for goods in the dyed and finished condition, is no evidence whatsoever of the profit charged upon these imported goods sold and imported in the gray, consigned for export and therefore not even covered by the claimed regulation of the syndicate.

Business common sense compels the conclusion that all profit on gray unfinished goods is presumptively much less than the profit obtained upon finished goods. There are many business reasons which it is unnecessary to go into why this is true.

The regulations of the syndicate do not apply to gray goods exported and there is no evidence of the profit *actually charged* on finished goods (claimed to be comparable) showing that the syndicate agreement was adhered to by its members.

The syndicate referred to in the foregoing quotation is denominated in said report of the special agent of the Government as the "Combine of German Velvet and Plush Manufacturers," and it appears that the manufacturer of the merchandise here involved was a member of said syndicate. As stated in said quotation, the said report contained statements to the effect that said combine permitted its members to add to material and labor cost of merchandise 50 per centum thereof for overhead and profit, with a minimum requirement of 42 per centum, but it appears from said report that such regulations do not apply to gray goods, such as the merchandise here in question, exported, and as hereinbefore stated such goods are not ordinarily sold in Germany.

The question therefore arises whether the lower court erred (1) in accepting the percentage of 8 per centum profit made by the manufacturer of the goods here in question upon his total turn-over as a basis for the addition for profit required by section 402 (e), *supra*, and (2) in applying the percentage of 8 per centum to the cost of material and labor, plus general expenses, in arriving at the profit which should be added to other costs of production with respect to the merchandise here involved.

In our opinion in *United States* v. *Maier, supra,* after quoting section 402 (e), *supra,* we said:

It will be observed that said subsection 4 provides for an addition for profit of an amount equal to the profit which ordinarily is added by manufacturers in the same country of the same class or kind of product. It does not provide that an addition for profit may be made equal to the profit of the particular manufacturer who made the goods in question. In this respect, therefore, the court below erred in its construction of the law and because of such error failed to give consideration to material and relevant testimony in the record on the matter of an allowance for profit.

In the decision there under review, the lower court had stated:

It seems to us that the general expenses and usual profit of each individual concern is the criterion.

This we held to be error so far as the question of profit is concerned, and we held that there was material and relevant testimony in the record on the matter of the allowance for profit that had not been considered by the lower court. We were then of the opinion that had such evidence been considered a different result might have been reached by the lower court. Upon the appeal now before us it appears that the lower court did consider such evidence upon the rehearing and came to the conclusion that the percentage for general expenses and profit permitted by the German combine under certain circumstances did not furnish a basis for addition for profit in the case at bar. We think this conclusion must be accepted by us, for upon further reflection we have grave doubt whether the 50 per centum allowance by the German combine, above referred to, with a minimum allowance of 42 per centum, upon finished velvets, could be considered as a basis for the addition for profit in arriving at the cost of production of the merchandise here involved. In any event, it was within the province of the lower court to weigh the evidence, and even if we were of the opinion that its finding is against the weight of the evidence, it is no part of our province to reverse the lower court merely upon such conclusion. This is so elementary that it needs no citation of authority to support it.

This brings us to the consideration of whether, under the facts disclosed by the record in the case at bar, the profit ordinarily made by the manufacturer of the merchandise here involved is some sub-

stantial evidence of profit required to be added to other elements of cost of production within the provisions of section 402 (e), *supra*.

Paragraph 4 of section 402 (e) reads as follows:

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

With respect to the proper construction of said paragraph 4, the lower court, after making its finding as to cost of production of the merchandise here involved, said in its decision, in part:

In addition it should be stated that much is attempted to be made of the new and radical words in the profit provision, section 402 (e), reading:

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind—

that by its own terms refers to such profit on the same kind of goods, not on goods further manufactured. The importer's own profit on the imported goods is some evidence of that, and the only evidence in this record. The profit of other manufacturers on alleged similar goods is a fact not in the possession of the importer which no rule of law or evidence would require him to prove and which according to this record is impossible of proof anyway, because the goods in the gray which he imports are never manufactured for sale and for home consumption in Germany but are always further dyed and finished.

No case in actual practice can be cited where the above new language in the statute has ever been applied, if, indeed, it is possible to apply. For the differing profits of many different manufacturers would have to be averaged, and such averaging would necessarily always be an arbitrary guesswork process. Every manufacturer's manufacturing costs, for a variety of reasons, are different from those of his competitors. As the costs of each differ the individual profits thereby differ. By which is the importer to be bound and by which is the ad valorem for his taxes to be determined—those who have low costs and therefore higher profits, or those who have high costs and therefore lower profits? Any application of the new words quoted above would therefore be a mere arbitrary guesswork process. They are consequently unworkable. Unworkable words in any statute should be ignored in applying it. That is the only way it could be given a rational construction.

We are not in accord with the views of the lower court, above quoted, that certain of the provisions of said paragraph 4 should be ignored by the courts upon the theory that their application would involve "arbitrary guesswork" and render the paragraph unworkable.

The provisions under consideration, while new in *general* tariff laws, are not new in tariff legislation. Said section 402 (e) appears to have been taken almost verbatim from section 206 of the Antidumping Act of 1921, which last-named section reads as follows:

Sec. 206. That for the purposes of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing, identical or substantially identical merchandise, at a time preceding the date of shipment of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of identical or substantially identical merchandise;

(3) The cost of all containers and coverings, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) equal to the profit which is ordinarily added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the same general trade as the manufacturer or producer of the particular merchandise under consideration.

From the legislative history of said Antidumping Act of 1921, it appears that said section 206 was incorporated in H. R. 2435 through an amendment reported by the Senate Committee on Finance, which was adopted by the Senate and agreed to in a conference report upon the bill. In the report of said Committee on Finance to the Senate upon the antidumping act, after reciting the substance of said section 206, we find the following:

The purpose of this definition is to create a constructive foreign-market value based on the cost of material and labor at a time preceding the date of shipment of the imported merchandise which would ordinarily permit the manufacture or production of such merchandise in the usual course of business. It is not limited to the actual cost of the imported merchandise. * * *

It would appear, therefore, that it was not the intent of Congress, when it enacted said section 206, to limit the cost of production, in cases where said section was applicable, to the actual cost of production of the imported merchandise, including actual profit realized by the manufacturer, and we think a like constuction should be given to said section 402 (e) of the Tariff Act of 1922. In other words, as we construe said paragraph 4, it is not enough to establish what the ordinary profit of the manufacturer of the imported merchandise was, if merchandise of the same general character was produced and sold by others in the country of exportation, and the profit made thereon is reasonably ascertainable. If not so produced and sold by others, the profit ordinarily made by the manufacturer of the imported merchandise in producing goods of the same general character as the imported merchandise may be resorted to in arriving at the statutory cost of production. We have so held with respect to said section 206 of the Antidumping Act of 1921. *Cottman & Co.* v. *United States*, 20 C. C. P. A. (Customs) 344, T. D. 46114.

It is our view that there is no occasion for construing said paragraph 4 by eliminating any portion of it as unworkable, as indicated by the lower court, but that it should be reasonably construed to effectuate the apparent intent of Congress, viz, that the profits of the manufacturer of imported merchandise shall not be the sole criterion in the application of the statute, but where there is other evidence in the record, or available to the parties with respect to profits ordinarily made by other manufacturers of merchandise of the same general character as that imported, in the country of exportation, such evidence must be considered by the appraising officers and by the court upon reappraisement, and the amount of profit should be determined according to the weight of all the evidence bearing upon the subject.

Applying these observations to the case at bar, we inquire whether there is any basis disclosed in the record for a finding that merchandise of the same general character as that here involved was manufactured in Germany and sold at a profit.

We think the words "merchandise of the same general character," as used in said paragraph 4, are not synonymous with the words "such or similar merchandise" as used in paragraph 2 of said section 402 (e).

The same words, "such or similar merchandise," are found in section 402 (b) of said Tariff Act of 1922, and were construed by this court in the case of *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T. D. 42714. We there said:

> In view of the common meaning of the word "similar" and of the authorities cited, we are of opinion, and so hold, that if goods are made of approximately the same materials, are commercially interchangeable, are adapted to substantially the same uses, and are so used, ordinarily, they are similar, within the meaning of section 402 (b). The importer or foreign manufacturer may not, by making a few changes in structure, or in giving the product a new name, or by restricting its sale to the American purchaser only, *ipso facto* remove his merchandise from section 402 (b), the foreign value provision.

It is apparent, therefore, that for different manufactures of velvets in the gray to be "such or similar" within the meaning of paragraph 2 of said section 402 (e), it is not enough that they be of the same general character, but they must be made of approximately the same materials, commercially interchangeable, and adapted to the same uses and so used, while in paragraph 4 of section 402 (e) it is sufficient if the merchandise be of the same general character as that imported. Therefore, different manufactures of velvet in the gray may be of the same general character, but not similar to each other.

It is our opinion in the case at bar that, under the facts disclosed by the record, all velvets manufactured and sold in Germany are, at a certain stage of their manufacture, of the same general character as the merchandise here involved, but that no velvets at such stage of manufacture are ordinarily sold by other German manufacturers; all sales are of velvets in their finished state, which velvets are not

of the same general character as the merchandise here under consideration. Under these circumstances, following our decision in *Cottman & Co.* v. *United States, supra*, we think that the ordinary profit of the manufacturer of the merchandise here involved may be accepted in arriving at the cost of production; or at least, it constitutes some substantial evidence of the profit required by the statute to be added to the other costs of production.

We therefore find no error in the decision of the court below, under the facts disclosed in the record, in basing its finding with respect to profit upon the ordinary profit received by the manufacture of the merchandise involved.

The remaining question is whether the lower court has added, to the other costs of production of the merchandise here involved, a sufficient sum based upon the ordinary profit received by the manufacturer of the merchandise.

The following are the items making up the cost of production as found by the lower court:

(1) Total cost of material and labor_____ 581. 17
(2) Adding 22⁷⁄₁₀₀ per centum thereof for general expenses (overhead)__ 132. 04
(3) Cost of packing_____ 10. 00
(4) Adding 8 per centum of items (1) and (2) for profit (see conclusion
    of court of appeals opinion T. D. 44679)_____ 57. 06

Total cost under the statutory process for 100 meters Swiss francs_ 780. 27
Or one meter Swiss francs_____ 7. 80

In the record the first amount, 581.17, is preceded by the dollar sign, obviously an inadvertence, all of the said amounts being in Swiss francs.

As heretofore noted, the court in arriving at its basis of profit to be added accepted the statement, found in the report of the special agent of the Government, that the profit of the manufacturer of the imported merchandise was 8 per centum upon the total turn-over, while in its decision it added only 8 per centum of the combined amounts of the cost of material and labor and general expenses, which manifestly is a less sum than 8 per centum upon the turn-over or selling price, for such price includes a profit. The lower court in its decision held, as hereinbefore quoted, that profit upon gray unfinished goods is presumptively much less than the profit obtained upon finished goods.

If the court had applied 8 per centum upon the total turn-over or selling price of all merchandise produced by the manufacturer of the imported merchandise, the percentage of the sum of material and labor cost of said imported merchandise and general expenses to be added for profit would be 8.7 per centum instead of 8 per centum. This would result in the addition of 3.99 Swiss francs per hundred meters to the 57.06 Swiss francs per hundred meters found by the

lower court to be the profit; or, in other words, in such case the appraised value would have been 7.84 Swiss francs per meter instead of 7.80 Swiss francs per meter as found by the lower court. It will be noted that this is a difference of only four-hundredths of one Swiss franc per meter. Without regard to whether the profit upon gray unfinished goods is presumptively less than upon finished goods, in view of the fact that there is found in the record in the said report of the special agent of the Government a statement that the manufacturer stated that his profit upon the merchandise here involved was 8 per centum upon the amount of material and labor cost and general expenses, we can not say that the lower court erred in adding for profit 8 per centum of the sum of the labor cost and general expense.

Of course, the items for both general expenses and profit will be slightly increased by the addition to the material and labor costs of 12 francs per hundred meters for the Schappe silk selvedge, evidently inadvertently omitted by the lower court and hereinbefore noted. Appellee concedes that, because of this omission, there should be added to the production cost of 6.32 reichsmarks per meter found by the lower court the sum of 0.1288 reichsmarks per meter, making the total cost of production 6.4488 reichsmarks per meter instead of 6.32 reichsmarks as found by the lower court.

The Government makes a general contention that because, as it contends, the record discloses that the managing director of the manufacturer made conflicting statements with regard to general expenses and profit, all of his statements should be ignored by the court. It appears from the record that the special agent of the Government was given access to the books of the manufacturer for the purpose of verifying such statements, and that the only information that was withheld by the manufacturer was with respect to a book described as "the association calculation book," evidently referring to a book issued by the "Combine of German Velvet and Plush Manufacturers" and not a book kept by the manufacturer of the imported merchandise. In view of these facts, we think the lower court had the right to give weight to the statements of the managing director of the manufacturer of the imported merchandise referred to in its decision.

While the Government in its brief contends that the lower court erred with respect to its finding upon the cost of containers, etc., as provided by paragraph 3 of said section 402 (e), we find no assignment of error upon this point and therefore it will not be considered by us.

We think it proper to observe that when the appellee had completed its case upon the trial before the single judge there was no substantial evidence before the court upon which a finding of the

54

statutory cost of production could be based, but the record contains no motion to dismiss the appeal for that reason, and there is, in our opinion, substantial evidence introduced by the Government supporting the judgment here appealed from except that, as hereinbefore stated, error was committed in not making proper additions for the Schappe silk selvedge, and this error necessitates a reversal of the judgment.

For the reasons stated, the judgment appealed from is *reversed* and the cause is *remanded* for further proceedings consistent with the views herein expressed.