UNITED STATES *v.* IRVING MASSIN & BROS. (No. 3027 [1])

United States Court of Customs Appeals, April 9, 1928

*Charles D. Lawrence,* Assistant Attorney General (*Hugo P. Geisler* and *Oscar Igstaedter,* special attorneys, of counsel), for the United States.

*Walden & Webster* (*Walter F. Welch* of counsel) for appellee.

[1] T. D. 42714.

20

[Oral argument February 9, 1928, by Mr. Igstaedter and Mr. Welch]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The matter now before us is an appeal from the judgment of the court below, in the reappraisement of certain black silk hatters' plush, imported by the appellee. Divers goods were imported and invoiced, but, by abandonment and stipulation, the issues are narrowed down to the consideration of but one item, namely, quality No. 2522. The local appraiser fixed the value of this material at the invoice value, namely, 2.18 gold marks per yard for the plush about 18 inches in width and at 3.50 gold marks for that 26 to 26½ inches in width. The Government appealed to reappraisement and Chief Justice Howell fixed the reappraised value at 3.00 and 4.80 gold marks, respectively, for the 18 and 26–26½ widths of No. 2522. While it is not so stated in the opinion of the chief justice, it is conceded by counsel that this was upon the theory that there was a foreign value for the goods in question and that the amount so found by him was that foreign value. The importer applied for a review of this judgment. On the first hearing the first division of the Customs Court, with Justice Sullivan dissenting, affirmed the judgment of Chief Justice Howell. On rehearing, the judgment was reversed. In the opinion accompanying this judgment of reversal, Mr. Justice Sullivan states, in part:

The facts are, as set out in the original case, that the merchandise is not similar to that sold in the home market. There is not a single fact, as we view it, sustaining the contention of similarity. Similarity is sought to be upheld by taking merchandise of a different quality number of a somewhat different material, and attempting to establish that such merchandise is practically identical with the merchandise in dispute. As pointed out at the original hearing, the analysis introduced was made in the United States of merchandise claimed to be similar, and from that it is stated the appraiser was justified in his action. There was not any attempt to ascertain the material or labor cost in the country of production. It must be admitted, at least by the facts, that the merchandise was not identical in weight or character of material with that under consideration; therefore, as heretofore pointed out, there is not that similarity for which the statute provides. The evidence fully discloses it was much cheaper in material than the lowest "combine" article that the Government had sought as an article for comparison.

From this judgment the Government has appealed.

The issue as made here involves a construction of the language "such or similar merchandise" as used in section 402 (b) of the Tariff Act of 1922, and, inasmuch as it is not contended by anyone here that *such*, or the same, goods are sold in the home markets in Germany, it finally becomes a question of the construction of the word "similar," as applied to the facts in this case.

On the part of the Government, appellant, it is claimed that the court below proceeded upon the theory that to constitute *similar* goods they must be identical with the imported goods, and that this holding constitutes reversible error; it is also contended that similar goods are sold in the German home markets, freely to all purchasers, and as provided by said section 402 (b), and that there is no substantial evidence in the record to support a contrary holding. On the part of the importer it is contended that the evidence shows that no similar goods are so sold; that the goods so claimed to be similar are not, in fact, similar; and that the goods so sold are not freely offered for sale in the foreign markets, as required by section 402 (b).

The principal facts are not disputed, and are these: In December, 1924, there began to appear in the American markets a French-made hatters' plush which sold for approximately $1 a yard. Thereupon the importer, which was then the sole American representative of Ling & Duhr, of Suchteln, Germany, in order to meet the said French competition, prevailed upon said Ling & Duhr to manufacture a competing plush. This was done, and quality No. 2522 was prepared, which plush could be sold on the American market for $1.05 per yard for a width of 45 centimeters and $1.70 per yard for a width of 66 and 67 centimeters, and which was imported by appellee in large quantities. By figuring back from the price at which this merchandise was so sold in the principal market of the United States, appellee deduced that the United States value was the entered value, 2.18 and 3.50 gold marks, as heretofore stated. This matter, not being important in determining the issues suggested, we have not attempted to consider whether the methods of computation so utilized by appellee are proper or not. It was claimed by the Government that several qualities of hatters' plush sold in the German markets were *similar* to importer's quality 2522. We think, however, the evidence and concessions of counsel finally eliminate all but quality 5400, manufactured and sold by J. L. de Ball & Co., of Lobberich, which quality 5400 then sold in the German markets for 3.00 and 4.80 gold marks, respectively, the amount found by Chief Justice Howell as the foreign value of the goods imported here.

The evidence as to the similarity of qualities 2522 and 5400 is, briefly summarized, as follows:

Jack Massin, a member of the importing firm, who stated that he had no personal knowledge of the construction of these plushes, testified "that the quality—the home market is far superior both in finish and construction than our quality 2522," and that he thought the home market quality had more silk than quality 2522. Michael J. Hart, a Government examiner, stated that he had compared the home-market quality and quality 2522, had counted the warp and filling, and made a comparison of the pile surface, and "find they

are practically the same," and that the qualities are similar. Arthur Neitzer, superintendent of Ling & Duhr, the manufacturers of quality 2522, made affidavit that he had procured a sample of the cheapest "combine" quality of hatters' plush sold in Germany, which he designated as Exhibit 1, and a sample of quality 2522, designated as Exhibit 2, both of which he attached to his affidavit. He then stated:

That with respect to quality No. 2522 this is a special quality manufactured for sale in the United States exclusively, and the same is of a quality not like any quality sold in Germany.

The manufacture of hatters' plush for sale and consumption in Germany is controlled by a combine, and the cheapest combine quality of hatters' plush sold in the home market is sold at a net price of 2.70 gold marks per yard; but the quality made expressly for the United States market, to wit, quality No. 2522, covered by the above-named shipments, is of a cheaper quality and construction than that sold in the home market, as shown by the following analyses. The cheapest combine quality for the home market is woven as follows:

*Warp:* Cotton yarn, 120/2 at 104 pence per lbl.

*Pile:* Real silk, 28/30 den. at 91.0 Swiss franc per kilo.

*Shot:* Cotton yarn, 30/1 at 4.50 Swiss franc per lbl.

    68 threads to the warp⎫

    34 threads to the pile⎬per square inch.

    40 threads to the shot⎭

Whereas our quality No. 2522 is made as follows:

*Warp:* Cotton yarn 120/2 at 97½ pence per lbl.

*Pile:* Real silk 28/30 den. at 85 Swiss franc per kilo.

*Shot:* Cotton yarn 30/1 at $1.53 per kilo.

    68 threads to the warp⎫

    34 threads to the pile⎬per square inch.

    29 threads to the shot⎭

We further draw the attention to the fact that the pile of the lowest combine quality is abt. one millimeter longer than the one of quality No. 2522, and by this and by the closer weaving of the lowest combine quality a considerable quantity of silk and cotton yarns is more used for the lowest combine quality than for our quality No. 2522. Furthermore, we beg to say that the weight of one yard in the original width is 67 gramm for the lowest combine quality whilst our quality No. 2522 weighs only 60 gramm per yard in the original width. This difference in weight would alone bring a difference in price of 30 pfennige in favor to our quality No. 2522. Taking, furthermore, into consideration that our quality No. 2522 is made of more inferior raw materials, which are of course cheaper, and woven looser, thus requiring cheaper weaving wages, we have anew come to the conclusion that our invoice prices are correct.

Sigmund Neustadt, a customs representative, in a special report, produced a sample of quality 5400, manufactured by J. L. de Ball & Co., and hereinbefore referred to, and which it is not denied was sold in the German markets. Harry S. Radcliffe, an importer and commission agent, dealing in velvets, ribbons, and plushes, testified that quality 5400 and quality 2522 are not put to the same uses; that quality 2522 is made for blocked-hat purposes, for which purpose the pile must be longer than that in quality 5400, which is not

made for that purpose, but for draping upon a shape in making women's hats. Carl van der Upwich, a partner in the firm of J. L. de Ball & Co., made affidavit that he had examined samples of qualities 5400 and 2522, and that they were entirely different and not interchangeable in the trade. In addition to this, by agreement of the parties, an analysis was made of samples of 5400 known as X, and 2522 known as Y, with the following result:

*Supplementary details of cloth body of hatter's plush in condition as received*

| Analysis | 85 | 86 |
|---|---|---|
| Qual | X | Y |
| Weight per square yd {oz.. | 4.16 | 4.08 |
| {grains.. | 1,820 | 1,785 |
| Cotton content..% | 80.45 | 82.46 |
| Silk content..% | 19.55 | 17.54 |
| Warp: Ends per inch (cotton) | 73 | 69 |
| Weft: Picks per inch (cotton) | 104 | 106 |
| Size cotton warp | 2/90 | 2/110 |
| Size cotton selv | 2/100 | 2/80 |
| Size cotton weft | 1/34 | 1/32 |
| Size silk deniers | 25/27 | 24/26 |

Feb. 25, 1926.

H. A. GASSMAN, *Analyst in Charge.*

Upon such a state of facts, may it be said, as a matter of law, that the imported merchandise was similar to the German home market goods?

The word similar is thus defined in Webster's New International Dictionary (1925):

Similar. a. 1. Nearly corresponding; resembling in many respects; somewhat like; bearing a general likeness.

This court has heretofore held that the word "such," as used in Paragraph L, Section III, of the Tariff Act of October 3, 1913, in the language "such or similar imported merchandise," meant "identical," and no reason is perceived why the same meaning should not be attached to it here. *United States* v. *Johnson Co.*, 9 Ct. Cust. Appls. 258 (270), T. D. 38215.

It will be noted that Justice Sullivan, in delivering the opinion of the court below, said: "It must be admitted, at least by the facts, that the merchandise was not identical in weight or character of material with that under consideration; therefore, as heretofore pointed out, there is not that similarity for which the statute provides." We are unable to agree with this exposition of the law. The law does not use the words "such" and "similar" synonymously, but with differing meanings, and alternatively. In our opinion, foreign value was to be ascertained, first, by "the market value, or the price * * * at which such," or the *identical* merchandise is offered for sale on the foreign markets, as provided by the statute, and, second, in the event that such merchandise is not so offered, then by "the market value or the price," at which *similar* mer-

chandise is so offered. If the word "similar" means no more than the word "such," then there is no reason for it being used in the statute. To so construe it, is to lose sight entirely of the ordinary meaning of the word and to adopt a construction based upon the theory that Congress has employed useless and unnecessary language in drafting this act, which, under ordinary circumstances, we may not do. *United States* v. *Post Fish Co.*, 13 Ct. Cust. Appls. 155, T. D. 41022. "Similar" merchandise must be construed as different from "such" merchandise in order to give this statute full effect. The extent and character of this difference it becomes our office to determine. The Supreme Court said, in *Greenleaf* v. *Goodrich*, 101 U. S. 278 (283):

> The statute does not contemplate that goods classed under the words "of similar description" shall be in all respects the same. If it did, these words would be unnecessary. They were intended to embrace goods like, but not identical with, delaines.

While the court below, apparently, was in error in its construction of this language of the statute, if the judgment of the court was correct, such error is harmless. *Roessler & Hasslacher Chem. Co.* v. *United States*, 13 Ct. Cust. Appls. 451, T. D. 41347.

In *Greenleaf* v. *Goodrich, supra,* the Supreme Court was called upon to construe the third item of section 13 of the Tariff Act of March 2, 1861, containing the language "all delaines * * * and on all other gray or uncolored goods of similar description." It was there contended that the word "similar" meant goods of the same kind. The Supreme Court, however, said:

> Composed, as the goods were, of the same material as delaines, having a similar general appearance, and intended for the same uses, they might well have been of similar description with colored delaines, though there were differences in the process of manufacture.

The same issues arose in *Schneider* v. *Barney*, 113 U. S. 645. There, however, the importer offered testimony to show that in trade and commerce the articles of importation were not known as goods of similar description to delaines, but which testimony was excluded by the court. The Supreme Court affirmed the judgment, and, reaffirming its judgment in *Greenleaf* v. *Goodrich, supra*, said:

> It was there decided that if they were similar in product, in adaptation to uses, and in uses, they were of similar description, even though in commerce they might be classed as different articles. Upon that question the decision in Greenleaf *v.* Goodrich must be taken as conclusive.

While the language of the statute in question in the two cases last above cited is not identical with that now before us, no reason appears why the reasoning of the Supreme Court therein used is not equally applicable here.

In *Monticelli Bros.* v. *United· States,* 8 Ct. Cust. Appls. 21, T. D. 37162, this court was discussing the language: "medicinal compounds,. combinations, and all similar articles," as they appeared in paragraph 17 of the Tariff Act of October 3, 1913. It said:

We are further impressed with the view that by "medicinal compounds, combinations, and all similar articles" Congress had in mind, first, strictly medical compounds, and combinations used as medicines, and, second, that articles to be similar thereto must be those which, while not strictly medical compounds or combinations because possessing properties which adapt them to other uses, are nevertheless susceptible of medicinal uses and in the form and condition imported are specially designed therefor and so chiefly used.

In *United States* v. *Closson Co.,* 12 Ct. Cust. Appls. 470, T. D. 40669, small brass crucifixes were claimed to be dutiable as similar articles, under the language of paragraph 1446 of the Tariff Act of 1922: "Rosaries, chaplets, and similar articles of religious devotion." The court held that while crucifixes and rosaries were both sacred articles in the sense that they were dedicated to a religious use, "the religious use of the one is not the religious use of the other and they are therefore not similar articles." See, to the same effect, *Kennedy & Sons* v. *United States,* 12 Ct. Cust. Appls. 347, T. D. 40489, and *Benziger Bros.* v. *United States,* 14 Ct. Cust. Appls. 270, T. D. 41883.

In view of the common meaning of the word "similar" and of the authorities cited, we are of opinion, and so hold, that if goods are made of approximately the same materials, are commercially interchangeable, are adapted to substantially the same uses, and are so used, ordinarily, they are similar, within the meaning of section 402 (b). The importer or foreign manufacturer may not, by making a few changes in structure, or in giving the product a new name, or by restricting its sale to the American purchaser only, *ipso facto* remove his merchandise from section 402 (b), the foreign value provision.

It may be said in this connection that the statute plainly provides that the dutiable value of the imported goods shall be fixed at the market value or price of such or similar goods offered for sale abroad. It can not, therefore, be fixed by comparison, by taking some proportionate part of the foreign value of comparable goods of different grade or value. It must be *the value or price* of *such* or *similar* goods.

Measuring the facts in the case at bar by the rules of law stated, and bearing in mind that if there be any substantial evidence in the record in support thereof, the judgment below must be affirmed, we conclude no error has been committed. The differences in construction of quality 5400 and 2522, as shown by the report of the analyst, might not be so great, in our opinion, as to prevent these fabrics being considered as similar, if other elements of the proof to establish similarity were present. There is, however, one element which

prevents them from being so considered, namely, their adaptability to use. It appears, from the uncontradicted testimony of Harry S. Radcliffe, that the two compared materials can not be used for the same purposes; that the imported material is used for making blocked and men's silk hats, while quality 5400 is adapted to use for general millinery purposes, in draping ladies' trimmed, loose hats, for which it is used, and that the goods are not interchangeable.

The importer suggests that quality 5400 was not freely offered for sale in the German markets and, therefore, can not be considered as similar to the imported merchandise. In view of the conclusion we have already reached in the case, a consideration of this question is unnecessary.

The Government insists that the findings of the court below are not sufficient under our holding in *Downing & Co.* v. *United States*, 15 Ct. Cust. Appls. 325, T. D. 42243. We have examined them, and, while informal in some respects, in our judgment they are sufficient.

The judgment of the Customs Court is, therefore, *affirmed*.