UNITED STATES *v.* F. VIETOR & ACHELIS (No. 3243)[1]

[1] T D. 43864.

United States Court of Customs and Patent Appeals, February 6, 1930

*Charles D. Lawrence*, Assistant Attorney General (*Philip Stein*, special attorney, of counsel), for the United States.

*B. A. Levett* for appellee.

[Oral argument December 5, 1929, by Mr. Lawrence and Mr. Levett]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court in reappraisement 53635–A.

The involved issues were before us in *United States* v. *F. Vietor & Achelis*, 16 Ct. Cust. Appls. 122, T. D. 42767. We quote from our decision in that case:

The merchandise involved consists of black velvet ribbons manufactured in Germany, known as pon 90, and imported in several widths. It is composed of a cotton pile, cotton warp, cotton weft, silk-satin back, and artificial silk edges. It was entered at its United States value, and appraised at the foreign value, less 20 per centum, of a ribbon identified in the record as "No. 9," and sold in the markets of Germany for consumption there.

In that case the importer appealed from the decision of the appraiser. The associate justice, sitting in reappraisement, sustained the appraised value. On appeal by the importer the appellate division of the Customs Court held that the merchandise had neither foreign nor export value; that it was dutiable at its United States value; and, accordingly, reversed the judgment of the associate justice. On appeal to this court we held that, while it clearly appeared that "such merchandise" was not sold or freely offered for sale in Germany (the coudtry of exportation) for home consumption, nor for export to the United States, and that "similar" merchandise was not sold in Germany for consumption there, unless the imported merchandise, quality No. 90, was "similar" to quality No. 9 (quality No. 9 was sold in the German market for home consumption, and was fully described in our decision), there was no evidence that merchandise

"similar" to that imported was not sold in Germany *"for export to the United States."* In this connection we said:

> The question of whether the merchandise had an export value was one of the issues raised by the appeal to reappraisement. In view of the failure of the importer to meet this issue by introducing evidence in regard thereto, the court below should have reversed the judgment of the associate justice and remanded the case for further proceedings. Accordingly, we must hold that there is no substantial evidence to sustain the findings of the court that the merchandise had no export value. For the reasons stated, we have not considered the question of similarity between the imported merchandise, No. 90, and that sold for consumption in Germany, No. 9. In this connection, however, we desire to call attention to our decision in the case of *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T. D. 42714, wherein the question of what constitutes "similar" merchandise was discussed.
>
> The merchandise was appraised by the local appraiser at the value of quality No. 9 ribbon, less 20 per centum. This is an appraisement based upon, rather than at the value of, "similar" merchandise, and is contrary to the provisions of section 402 of the Tariff Act of 1922. *United States* v. *Irving Massin & Bros.*, *supra.*
>
> The judgment is *reversed* and the cause *remanded* for proceedings consistent with the views herein expressed.

The record now before us includes the record in the former case and additional evidence introduced by the importer.

After considering the evidence, the trial court found, as we understand its decision, that the involved ribbon, quality No. 90, was "similar" to ribbon, quality No. 9, sold for consumption in Germany, and accordingly held that the imported ribbon was dutiable at the foreign value of quality No. 9. The question of export value was not mentioned in the decision.

The appellate division of the Customs Court reversed the decision of the trial court, holding that it had been established by the importer that the involved merchandise was manufactured exclusively for the Trafford Co., for whose account the merchandise was imported; that "such or similar merchandise" was not freely offered for sale in the German markets, either for home consumption or for export to the United States; and that the dutiable value of the merchandise was its United States value.

It is contended by counsel for the Government that the importer has failed to establish that the merchandise did not have an export value; that it clearly appears that the ribbon referred to in the record as "quality No. 9" is "similar" to the imported ribbon, quality No. 90; and that there is no substantial evidence in the record to support the judgment of the appellate division of the Customs Court.

In our former decision, *United States* v. *F. Vietor & Achelis, supra,* we quoted the following from the testimony of the witness, Radcliffe:

A. Well, for the weft for the home article, article 9, they use a grade of cotton known as No. 50r/1 medio, and for pon 90 they use No. 40r/1 medio for the four-line width, and for the wider widths they use No. 36r/1 medio. In the warp for pon 9 they use cotton No. 100r/2 twist, and for pon 90 they use No. 80r/2 twist. For the pile of No. 9 for the home article they use No. 60r/2 soft S. J. comb., and for the pon 90 pile in the four-line widths they use No. 40r/2 soft, and for the wider widths they use No. 60r/2 plain Louis. For the satin— I might say that the warp, weft, and pile of the material I have spoken of so far is cotton. Now, for the satin they use organzine silk 28/30 denier, and for pon 90 they use organzine silk 19/21 denier. For the edges of the home article they use also organzine silk 28/30 denier, and for the edges of pon 90 they use artificial silk 100 denier.

We there criticized the testimony of the witness, Radcliffe, because it seemed to be predicated entirely upon such information as he had received from "his own mill" in Germany. We held, however, due to other evidence in the case, that if there was any evidence of a foreign value it was limited to the question of similarity between the imported ribbon, quality No. 90, and the ribbon, quality No. 9, sold for consumption in Germany. Due to the failure of the importer to submit evidence relative to export value, we declined to pass upon the question of the similarity of qualities No. 9 and No. 90.

We have examined the record before us with care, having in mind the importance of the issues involved. The witness, Radcliffe, has materially added to the testimony given by him on the former trial. It now appears that he not only had full information concerning the various qualities of ribbon imported into the United States, but that he went to Germany in 1925 for the express purpose of securing information concerning the various qualities of ribbon manufactured and sold in Germany, both for home consumption and for export to the United States; and that he made such an investigation (having in mind the involved ribbon) and found that the only ribbon manufactured in Germany and freely offered for sale for export to the United States had either *silk* or *cotton edges*. He further said that the imported merchandise, which is manufactured for, and sold exclusively to, the Trafford Co., *has artificial silk edges;* and that ribbon with artificial silk edges can not be substituted for, and is not commercially interchangeable with, ribbon having either cotton or silk edges. We conclude, therefore, that there is substantial evidence to sustain the finding of the court below that the imported merchandise did not have an export value.

Is the imported ribbon "similar" to quality No. 9, sold for consumption in Germany? If it is, the foreign value has been established; if it is not, the existence of foreign value has been negatived. *United States* v. *F. Vietor & Achelis, supra.*

In the case of *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T. D. 42714, this court construed the language "such or

similar merchandise" as used in section 402 of the Tariff Act of 1922. We there said:

In view of the common meaning of the word "similar" and of the authorities cited, we are of opinion, and so hold, that if goods are made of approximately the same materials, are commercially interchangeable, are adapted to substantially the same uses, and are so used, ordinarily, they are similar, within the meaning of section 402 (b). The importer or foreign manufacturer may not, by making a few changes in structure, or in giving the product a new name, or by restricting its sale to the American purchaser only, *ipso facto* remove his merchandise from section 402 (b), the foreign value provision.

It may be said in this connection that the statute plainly provides that the dutiable value of the imported goods shall be fixed at the market value or price of such or similar goods offered for sale abroad. It can not, therefore, be fixed by comparison, by taking some proportionate part of the foreign value of comparable goods of different grade or value. It must be *the value or price* of *such* or *similar* goods.

It clearly appears from the record that the imported ribbon, quality No. 90, differs considerably in construction from the ribbon, quality No. 9, freely offered for sale for consumption in Germany but not freely offered for sale for export to the United States. Quality No. 90 has artificial silk edges, while quality No. 9 has organzine silk edges. We have hereinbefore quoted the testimony of the witness Radcliffe, which clearly shows that the imported ribbon, quality No. 90, is inferior in other respects to quality No. 9. The witness also testified that the two qualities of ribbon were not commercially interchangeable. It further appears from the record that quality No. 9 ribbon, due to the difference in construction, is worth at least 20 per centum more than the imported ribbon, quality No. 90. There is some evidence to the effect that the difference in value is even greater than 20 per centum. No doubt the two qualities have similar uses, but it does not necessarily follow that they are "similar" for appraisement purposes. Suppose, for example, that two automobiles are imported into the United States. One is worth $5,000 and the other $1,000. They are used for similar purposes, but surely no one would have the temerity to suggest that they were "similar" for appraisement purposes.

The imported ribbon, quality No. 90, and the alleged similar ribbon, quality No. 9, may be adapted to substantially the same uses, but they are not made of approximately the same materials, nor are they commercially interchangeable. We hold, therefore, that the two qualities of ribbon are not "similar" for purposes of appraisement, and that there is substantial evidence in the record to support the judgment below. For the reasons stated the judgment is *affirmed*.