UNITED STATES *v.* R. W. CRAMER & CO. (No. 3663)[1]

---

[1] T. D. 46911.

United States Court of Customs and Patent Appeals, January 29, 1934

*Charles D. Lawrence*, Assistant Attorney General (*Hugo P. Geisler* and *Ralph Folks*, special attorneys, of counsel), for the United States.
*Brown & Carter* (*Allan R. Brown* and *Fred J. Carter* of counsel) for appellee.

[Oral argument December 5, 1933, by Mr. Folks and Mr. Brown]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellee imported at the port of New York certain goods, denominated by the appraiser as "so-called electromechanic recorders without escapement or jewels, composed wholly or in chief value of metal." These were classified by the collector under paragraph 368 of the Tariff Act of 1922. The importer protested, claiming the goods to be alternatively dutiable under paragraph 372 of said act, at 30 or 35 per centum, or under paragraph 1459 at 10 or 20 per centum, ad valorem.

The United States Customs Court sustained the protest as to the claim made under said paragraph 372 at 30 per centum, stating in its decision that the importer claimed under the following language of said paragraph: "* * * all other machines or parts thereof, finished or unfinished, not specially provided for." The appellee files no brief in this court.

The imported goods consist of electromagnetic recording devices intended and constructed to be used for the recording of certain events, such as the number of times an elevator rises or descends in its shaft, or the number of times a railroad train or a street car passes a certain point. Each device is constructed largely of metal, and is encased in a metal box with a glass-covered opening in the cover of said box, so that the record may be read without the opening of the box. A roll of record paper is contained within the mechanism, which is on a spool or roll, and which is fed under and over two smaller rollers, much in the same manner as a sheet of paper is fed through the roller and over the platen of a typewriter. A number of ink-carrying styluses are mounted on arms, so that each stylus will, when moved by its accompanying arm, be depressed and make a dot upon the paper immediately under the stylus.

The mechanism operates in this fashion: When an elevator, for instance, rises in its shaft to a certain point, it makes an electrical contact. Electric current then enters the recording device and energizes a magnet, which, in turn, operates an attached arm and stylus, thus causing the stylus to touch the paper and make a dot.

At the same time an electrical impulse enters another electromagnetic device and this, in turn, causes the paper to be drawn forward a certain space, through means of gearing and a ratchet. The device then remains in the same condition until again an electrical contact is made by the elevator, when the process is repeated. The result is a series of dots upon the recording paper, by means of which the observer may determine, by counting, how many times the operation was performed. There is no clockwork mechanism attached to the device.

The relevant portions of the statutes involved are:

PAR. 372. * * * all other machines or parts thereof, finished or unfinished, not specially provided for, 30 per centum ad valorem: * * *.

PAR. 368. * * * and any device or mechanism having an essential operating feature intended for measuring time, distance, or fares, or the flowage of water, gas, electricity, or similar uses, or for regulating or controlling the speed of arbors, drums, disks, or similar uses, or for recording, indicating, or performing any operation or function at a predetermined time or times, * * *.

The trial court was of opinion that the imported devices did not come within the purview of any of the language of said paragraph 368, and that they were within the description of "all other machines," and should properly be classified under said paragraph 372.

We are unable to agree with the trial court in this conclusion, for the following reasons:

In *Tagliabue Mfg. Co.* v. *United States,* 21 C.C.P.A. (Customs) 221, T.D. 46751, we had before us certain gas recorders used to record the amount of carbon dioxide moving through the flues of a flue box, and to aid the fireman in economically regulating the combustion of fuel. This device had, as an essential element, a small clockwork mechanism, which had no function except that of rotating the drum upon which a chart was carried, and upon which chart the record was made. This court held that the clockwork mechanism was an essential operating feature for regulating or controlling the speed of arbors, drums, disks, or similar uses.

It will be observed that the language of said paragraph 368 is not confined exclusively to clocks and clockwork mechanisms. While the paragraph was probably intended to be particularly applicable to clocks and clock movements, the language includes many devices and mechanisms which have no such element, and may be satisfied by the electromagnetic feature of the devices in question here. The language of the paragraph is "*any* device or mechanism having an essential operating feature * * * for regulating or controlling the speed of arbors, drums, disks, *or similar uses.*" (Italics ours.)

The paper which is drawn from the roll or spool in the devices now before us is directly under the control of an electromagnet provided for that purpose. This electromagnet which, it must be conceded, is an "essential operating feature," regulates and controls the speed of the paper, and the spool and rolls upon which the paper moves,

and without which, or some equivalent, they would not move at all, and the device would be inoperable. We are of opinion that this must be held to be a similar use to those specifically mentioned by the language, namely, "regulating or controlling the speed of arbors, drums, or disks."

In passing upon the meaning of the word "similar", in *United States* v. *Massin*, 16 Ct. Cust. Appls. 19, T.D. 42714, we quoted Webster's definition of the word:

Similar. a. 1. Nearly corresponding; resembling in many respects; somewhat like; bearing a general likeness.

Such definition, we believe, is sufficient to bring the devices in question within the purview of the quoted language of said paragraph 368.

This matter was heard, considered, and decided by the trial court before our decision in *Tagliabue* v. *United States*, *supra*, and hence that court did not have the benefit of our views upon that case before passing upon the present issue.

The judgment of the United States Customs Court is *reversed*.