Indussa Corp. *v.* United States (No. 4997)[1]

United States Court of Customs and Patent Appeals, March 15, 1960

*Barnes, Richardson & Colburn* (*Hadley S. King* and *Norman C. Schwartz* of counsel) for appellant.

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Daniel I. Auster*, trial attorney, of counsel), for the United States.

---

[1] C.A.D. 736.

94

[Oral argument December 2, 1959, by Mr. King and Mr. Auster]

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[2]

MARTIN, Judge, delivered the opinion of the court:

 This appeal is from the judgment of the United States Customs Court, Third Division, reversing the judgment of a single judge sitting in reappraisement. The merchandise involved is enameled cast iron household ware classified under the provisions of paragraph 339, Tariff Act of 1930, and consists of frying pans, sauce pans (in two sizes) and oval casseroles. The goods were exported from Belgium on or about January 8, 1955, and entered the United States on or about January 20, 1955. They were appraised at *per se* unit prices, less 27 per centum discount, plus 9 per centum Belgian home sales tax and packing charges.

It is conceded that the foreign value is the proper basis upon which to appraise the goods, there being no export value. Section 402(c) provides:

FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The evidence of record is solely documentary. Included are two affidavits by one of the directors of the manufacturer of the goods involved herein, one dated January 8, 1957, and the other September 26, 1957. They establish that since March 1953 the manufacturer's sales for export to the United States have been made exclusively to appellant. In addition to the imported items the exporter manufactures and sells pots, dutch caldrons, serving dishes and many other articles for cooking and serving food, all, including the imported items, made of cast iron with an enamel veneer. Also, the following is shown:

That the sales for home consumption in Belgium for the period July 1, 1954 to December 31, 1954, were as follows:

| | Discount | Number of Sales |
|---|---|---|
| 500 kilograms or more | 40% | 105 |
| 350 kilograms to 500 kilograms | 35% | 3 |
| 200 kilograms to 350 kilograms | 30% | 8 |
| 50 kilograms to 200 kilograms | 27% | 18 |

---

[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell,* pursuant to the provisions of Title 28, United States Code, Section 294(d).

A translation of a portion of a price list attached to the first affidavit reads:

On the prices in the above price-list, the following discounts may be granted:
from 50 kg. to 200 kg. or from 2,500 frs. gross to 10,000 frs. gross—list price less 27%
from 200 kg. to 350 kg. or from 10,000 frs. gross to 17,500 frs. gross—list price less 30%
from 350 kg. to 500 kgs. or from 17,500 frs. gross to 25,000 frs. gross—list price less 35%
500 kg. and over or 25,000 frs. gross and over: list price less 40%

An American consular report dated May 18, 1954, confirms the fact that sales for export to the United States were made exclusively to appellant and states that merchandise identical to that offered appellant was offered on the home market without restriction.

The Customs Court, Third Division appellate term, found *J. J. Gavin & Co., Inc.*, (*Salomon & Phillips*) v. *United States*, 38 CCPA 69, C.A.D. 441, to be controlling, and held that since the importer failed to prove any proper basis for evaluation, the presumption of correctness attaching to the appraiser's valuation was determinative. The most succinct statement of the points of disagreement between the parties can be gleaned from the following excerpt from the Government's brief:

We therefore contend that whether the discount is determined by *weight or by value*, neither basis can be held operative herein because the merchandise is shown to be sold by *the piece*. Furthermore, there is a complete lack of *substantial* evidence to adopt the 40% discount even if, as a matter of law, it were permissible to adopt a discount by *weight* of the merchandise *or by value*, which we do not concede.[3]

The appellant contends that the "usual wholesale quantities" are lots sold by the *per se* unit price less a 40% discount, pointing out that over 75% of the manufacturer's wholesale transactions for Belgian consumption were in lots of 500 kilograms or more.

It appears to us that in determining the issues herein we must continuously keep in mind the distinction between the responsibility of the appraiser to evaluate *each* article imported and the *method* by which he ascertains that value. Since the appraiser *must* assign a dollar value to each individual unit imported, Congress envisioned and authorized various means (Sections 402 (a)–(g)) by which he *might* arrive at the proper dollar value. When the responsibility and the means by which that responsibility is carried out are confused, the intent of Congress can easily be thwarted.

For instance, in the case at bar it has been determined that the "foreign value," sec. 402(c) of the Tariff Act of 1930, is the proper

[3] Footnote ours. The Government in oral argument, conceded that the imported goods *are related*, and that it did not agree with any contrary holding by the court below.

basis upon which to predicate the value of each article imported. That provision, however, encompasses more than one method by which its terms may be satisfied. We have been called upon to decide whether appellant's evidence satisfies any of the means established by Congress in sec. 402(c) to assist the appraiser in performing his primary duty of assigning a proper dollar value to imported goods. With this in mind, we now turn to the specific issues in this case which are:

(1) Can § 402(c) in providing "the price * * * at which *such* * * * merchandise is freely offered for sale * * *" [Emphasis ours.] be construed to encompass all of the articles sold by the manufacturer, including those imported here?

(2) Does a discount predicated upon the weight of sales of assortments of the manufacturer's merchandise come within the purview of § 402(c) for the purpose of ascertaining "usual wholesale quantities" when each article is offered for sale on a *per se* unit basis?

As to the first question, this court in *United States* v. *Fisher Scientific Company*, 40 CCPA 164, C.A.D. 513, had under consideration the "usual wholesale quantities" portion of § 402(c). The merchandise involved was analytical balances. A special discount of approximately 25% was offered to all who purchased five or more of one or *assorted* models. Even though there was a *per se* unit price for each of the individual models, this court held that the "usual wholesale quantities" within the meaning of § 402(c) was five or more balances and strongly implied that said quantities also encompassed five or more balances of assorted models.

We believe that the Congress intended the statute to mean that when it has been established that certain merchandise of the manufacturer is sufficiently related, all of the foreign sales for home consumption of those related articles when sold in lots of assorted items will provide a basis for establishing the "usual wholesale quantities" under § 402(c).

The word "such" as used in that section has been construed by our predecessor court to mean "identical." *United States* v. *Meadows Wye & Co., Inc. (F. A. MacCluer, Inc.)*, 15 Ct. Cust. Appls. 451, T.D. 42643. However, we believe that this definition includes items of identical manufacture varying only slightly in size or in size and shape, when used for the same purpose and sold by the manufacturer, *in his usual course of business*, in assorted lots, when the question of determining the "usual wholesale quantities" arises. In the *Fisher* case, three models of balances, each having a different *per se* unit price, were involved, and this court, in discussing the issues, stated:

Pertinent portions of defendant's Exhibit A, the consular report, are also set out here:

 * * * * * * *

(d) Prices vary with the quantity purchased. Any purchaser, whether wholesaler, retailer, or consumer, gets retail prices when ordering one to four balances, and wholesale prices when ordering five, ten, fifteen, or more balances. * * *

\* \* \* there are only three wholesale sales listed in that report, two of 5 balances and one of 7, which may properly be considered as entering into a determination of the usual wholesale quantities. * * *

The purpose of determining the *usual* wholesale quantities under section 402 is to ascertain the proper valuation of the imported merchandise. Foreign value is not the price to wholesalers, but the price in the usual wholesale quantities. The law is not concerned with the persons who buy, but the manner in which they buy. *United States* v. *Richard & Co.*, 15 C.C.P.A. (Customs) 143, T.D. 42216. It is obvious that in this case such valuation would be the same if 5, or 7, or 10, or 20 balances were to be regarded as the usual wholesale quantity. In our opinion, there is here *only one wholesale quantity* in the ordinary course of trade, namely, *5 or more* balances. We think it necessarily follows, in view of the foregoing, that in this case the usual wholesale quantity within the meaning of section 402 (c) is *5 or more* balances.

As to whether the merchandise here under consideration is encompassed by the principle of the *Fisher* case, we find that all of the merchandise which has been brought to our attention as being produced by the manufacturer of the imported goods is so related that we consider it to be "such" merchandise for the purpose of establishing the *usual wholesale quantities* under § 402 (c). The items are all household kitchenware made of cast iron and coated with enamel. Although each piece may be used to prepare different foods, they all have the same function—cooking and serving food.

Certainly all of the manufacturer's merchandise, including that imported here, is identical with respect to the manner in which it is offered for sale and purchased in wholesale quantities.

The factual situation here is analogous to that in the *Fisher* case with some insignificant exceptions. In both the composition of the various articles is the same. Although the *per se* unit price is different for each individual item in the two situations, the "usual wholesale quantities" is determined by the sales of like or assorted items in each. Even though this court in the *Fisher* case found only one offered wholesale quantity, five or more balances alike or assorted, *the fact that* here there are four possible quantity discounts is not significant since § 402 (c) contemplates the existence of more than one wholesale price and in such situations makes it incumbent upon the importer to prove the usual wholesale price by showing the usual wholesale quantity sold.

The *Gavin* case is not controlling in this connection because there the articles were all unrelated. The importations consisted of saddle

soap and other different items. This court stated in that case that the evidence was to the effect that—

* * * in England, it is the universal practice of manufacturers and dealers of articles such as or similar to those of the exporter, to allow discounts based on the total money value of different purchases offered for sale and that such practice conforms to the ordinary course of trade in the exporter's business.

It appears that all purchasers receive discounts upon the total amount of the invoice, the lower the amount, the less the discount; and the higher the amount, the higher the discount, until a maximum of 17½ per centum on a total amount of 10 ℔ or over is reached.

This court then quoted approvingly the Customs Court's conclusions of law, one of which was:

That in finding the proper value of the saddle soap, we are limited to a consideration of sales of saddle soap only, and are not permitted to consider also the sales of other *unrelated* items of merchandise made by the exporter herein. [Emphasis ours.]

and went on to say:

We have no doubt that the only proper construction of those sections [19 U.S.C. 1402(c), 1500] is that the appraised valuation of the imported articles * * * cannot include the value of saddle soap in combination with the values of *other different items*. [Emphasis ours.]

The difference is obvious between the *Gavin* situation and that in the case at bar. There the discount on the saddle soap increased in proportion to the total sales price of the saddle soap and other different and unrelated items. Here we have found all the items to be manufactured of the same materials, to be approximately the same size, and to be different in shape only to the extent necessary to adapt them to their specific cooking and serving functions.

We come now to the second question. Appellant has established the fact that in the ordinary course of the wholesale trade as respects the manufacturer of the imported goods, varying discounts are allowed according to the weight of lots of the related articles, and when considering articles of this composition and single purpose, such a practice sounds logical and reasonable to us. That method of merchandising is not used for any ulterior motive insofar as the record reveals, and no argument to the contrary has been made.

We find nothing in the Tariff Act of 1930 as amended which would prohibit the determination of the foreign value of imported articles by calculating their sales price on the basis of a unit price less a discount predicated upon the specified weight of sales of lots containing related articles as long as the discount is granted in the "ordinary course of trade" and, as is true here, the appraiser can accurately calculate the sales price of the imported articles. Section 402(c) provides that the value of the imported merchandise shall be the market value or the price at which "such or similar merchandise is freely

offered for sale" in the *usual wholesale quantities* and *in the ordinary course of trade*. We do not agree with appellee's contention that the statute prohibits a discount by weight where the articles have unit list prices, provided accurate determinations of the "usual wholesale quantities" and foreign value can be made. We believe Congress' primary interest was in having the appraiser ascertain what are the "usual wholesale quantities * * * in the ordinary course of trade" involving legitimate business transactions. The ultimate objective of properly valuing the imported merchandise was its concern, not the specific mechanism by which this factor is determined. The manufacturer's *ordinary course of trade* has provided the appraiser with a means by which that manufacturer's *usual wholesale quantities* can be established, and we find it is a proper one.

We do not agree with the Government's position that appellant has not met its burden of overcoming the presumption of the appraiser's correctness. We see no reason to hold that the affidavits are merely conclusionary as the Government contends. They contain facts: *inter alia*, a price list of all of the coated cast iron articles offered for sale by the manufacturer, a statement of its wholesale discount procedure, and a list of its wholesale transactions for a six month period. From this evidence the appraiser can ascertain the foreign value of the imported merchandise which is the *per se* unit price for each article less 40% discount, plus 9 per centum Belgian home sales tax and packing charges. For the above reasons we *reverse* the decision of the Customs Court.

---

WORLEY, Chief Judge, dissenting.

First, it is well settled that if merchandise *identical* with that imported is *freely offered for sale* in the usual wholesale quantities in the country of export it is not proper to consider merchandise of any other type in determining foreign value. *United States* v. *Meadows Wye & Co., Inc.*, 15 Ct. Cust. Appls. 451, T.D. 42643; *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T.D. 42714. Here the record shows that *each* type of utensil imported was *freely offered for sale by itself* in wholesale quantities in Belgium at the time of export. Under such circumstances we should not, in fixing foreign value, resort to sales of mixtures of miscellaneous kitchenware which may or may not have included some items of the *type* imported.

Second, *United States* v. *Fisher Scientific Company*, 40 CCPA 164, C.A.D. 513, was properly distinguished by the Customs Court. I do not understand that case to hold, either expressly or by implication, that sales or offers for sale of several types of balances in assorted lots may be used as a basis for fixing the foreign value of *only one type*. Each type of balance there was *offered for sale by itself* in a *single*, not

four as here, wholesale quantity of five or more balances which was held to be the usual wholesale quantity. The fact that assorted types could be similarly purchased had no bearing on the conclusion reached.

Third, I agree with the Customs Court that *J. J. Gavin & Co., Inc.* v. *United States*, 38 CCPA 69, C.A.D. 441, should be controlling here. There it was held that sales of a miscellaneous mixture including saddle soap and other items, could not properly be used as a basis for fixing the foreign value of saddle soap alone. If, as the majority holds, the various kinds of kitchenware involved constitute a single type of merchandise merely because they are all used in cooking, would it not also be just as logical to allow an importer to combine pianos, violins, and xylophones merely because they are all used in making music?

Finally, I am of the opinion the Customs Court correctly held that the importer failed to sustain its burden of establishing a foreign value differing from that at which it was appraised. I would affirm.