UNITED STATES *v.* ARKELL SAFETY BAG Co. (3695)[1]

UNITED STATES *v.* ARKELL SAFETY BAG Co. (3696)

United States Court of Customs and Patent Appeals, May 31, 1934

*Charles D. Lawrence*, Assistant Attorney General (*John F. Kavanagh* and *Peter A. Abeles*, of counsel), for the United States.

*Sharretts & Hillis* (*Edward P. Sharretts* of counsel) for appellee.

[Oral argument December 14, 1933, by Mr. Kavanagh and Mr. Sharretts; reargument April 4, 1934, by Mr. Abeles and Mr. Sharretts]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

These are appeals by the Government in reappraisement proceedings, arising under the Tariff Act of 1930, the cases being consolidated. Suit 3695 involves only one appeal. Suit 3696 is, in substance, an amendment to suit 3695 and embraces not only the appeal in suit 3695, but three others. So, in all, there are four appeals to which the judgment of the trial court relates.

The merchandise involved is Kraft wrapping paper used, we understand, for the wrapping of parcels and packages. It was imported from Sweden, in rolls, which rolls, according to the brief of appellee—

* * * are from 26 to 28 inches in diameter and weigh from 150 to 200 kilos (330 to 440 pounds) and sometimes as high as 500 kilos (1.100 pounds).

[1] T. D. 47210.

It will be observed that the foregoing description says nothing of the size or weight of the paper, but refers only to the diameter and weight of the rolls.

It is claimed by appellee that the merchandise has no foreign value, as that term is defined by paragraph (c) of section 402, Tariff Act of 1930, and it was accordingly entered at what is claimed to have been its export value, as that term is defined by section 402 (d) of said act.

The local appraiser, however, took the view that there was a foreign value (as defined by section 402 (c) of said act) which he found to be higher than the export value at which it was entered, and appraised accordingly.

The importer thereupon appealed to reappraisement, and a single judge of the United States Customs Court, sitting in reappraisement, sustained the entered export value. Upon appeal by the Government, the Third Division of the United States Customs Court affirmed the decision of the single judge. The instant appeal to this court followed.

The case is rather complicated, and the record is meager and unsatisfactory, particularly in view of the importance of the issues involved.

The legal theory advanced by counsel for appellee was and is that the merchandise must be considered for appraisement purposes, not as *paper merely*, but as *rolls* of paper. It is conceded that paper of the same *quality* is sold in the markets of Sweden for consumption there, but the insistence is that such paper, in the process of preparing it to meet the home-market demand, is made into rolls of much smaller diameter than the diameter of the rolls of paper exported; that this is the regular and usual course of business; that these smaller rolls cost much more to produce and place in packed condition than do the involved rolls because of the differences in the processes of manufacturing and packing, and that the rolls for consumption in Sweden do not constitute merchandise "such or similar" as, or to, the *rolls* exported from Sweden to the United States.

At the trial of the case appellee introduced in evidence an affidavit (with certain exhibits thereto) of one Torsten S. Rådberg, who identified himself as the sales manager of the company which manufactured and exported the involved merchandise. This affidavit, after stating that machine-glazed Kraft paper is sold both for domestic consumption in Sweden and for export to the United States and other countries, says:

* * * So far as the paper itself is concerned, the machine-glazed Kraft paper sold for domestic consumption is practically the same as that sold for exportation to the United States and other countries.

There is, however, a distinction between the method of producing and packing the paper for ordinary domestic use and that for export.

The principal domestic use in Sweden for this paper is by retail shopkeepers to wrap up parcels. The domestic retail shops are equipped with standard counter stands, and the rolls of paper must be constructed to fit these stands. The rolls constructed for this purpose are generally from 3 to 6 inches in diameter and the paper ranges in width from 8 inches (20 centimeters) to 59 inches (150 centimeters). These rolls or reels weigh from 3 to 10 kilos per reel. The sales in the domestic market vary in quantity between 100 to 200 kilos up to carload lots of 10 tons, comprising a variety of sizes and substances. For instance, as sold in the domestic market the paper is sold in the following centimeter widths: 20, 40, 57, 75, 90, 100, 120, and 150. One consignment may include a variety of these sizes.

\* \* \* \* \* \* \*

The method of packing the small rolls for the Swedish market is also different than the method of packing employed in the large export rolls. From the small reeling machines the domestic reels go directly to the packing department, where they are bundled, wrapped in paper, marked, labeled, and tied with strings. These bundles contain from 3 to 6 reels and weigh from 15 to 30 kilos as distinguished from the export paper which is made up in bales or rolls of about 150 to 200 kilos and even up to 500 kilos each. The item of packing alone is about two and one-half times greater for the domestic than the export rolls.

\* \* \* \* \* \* \*

The rolls of Kraft paper for export to the United States and other countries present a very different manufacturing condition. They run in widths which make it possible to better utilize the machine widths than is the case with the domestic rolls. Owing to the larger diameter of the export rolls (as a rule from 26 to 28 inches as compared to 3 to 6 inches for the domestic) the extra rewinding is not necessary and the extra machinery and operations used for the latter is dispensed with. The question of waste, the extra costs and time incident to the constant stopping of machinery, new felts, etc., and the employment of extra machinery in the production of the domestic rolls present different manufacturing problems than are presented in the production of the export rolls.

The affidavit also states that the price of the paper in the domestic market is based upon the manufacturing, packing, and distribution costs incident to the production and sale as ordinarily required for domestic use; that the small rolls require extra rewinding operations and slitting to required widths, not applied in the production of the large export rolls, and that there is a greater waste in the manufacture of the smaller rolls.

The Government introduced a report (with exhibits thereto) of a special agent who, upon instructions of the Treasury Department, visited and interviewed the manufacturer, making an investigation such as is usual in such cases. We do not deem it essential to quote at length from this report. It does not contradict, but rather verifies such parts of the manufacturer's affidavit as have been quoted, *supra*.

It is obvious that both the single judge, sitting in reappraisement, and the Third Division of the Customs Court took the legal view contended for on behalf of appellee, and treated the merchandise, for appraisement purposes, not as paper *per se*, but as rolls of paper. The opinion of the latter tribunal, among other things, says:

The weight of the evidence establishes that this paper is manufactured in various size rolls; that only the smaller size "counter rolls" are sold in wholesale

quantities for home consumption in Sweden; that the importations herein consist of larger "Jumbo rolls"; and that the packing and labor charges coincident to manufacturing this paper into smaller rolls are very much greater than for the larger rolls, which results in the packed sales price of the small rolls being much higher than the packed sales price of the Jumbo rolls; and that unit prices are quoted per kilo, packed.

·That tribunal also formally found:

1. That the merchandise herein consists of Kraft wrapping paper in Jumbo rolls, exported from Sweden during the period from August 30 to December 12, 1930.
2. That there is no foreign-market value for this merchandise, as defined in section 402 (c) of the Tariff Act of 1930.

Its third formal finding was to the effect that the export value, as defined in section 402 (d) of the Tariff Act of 1930, constituted the correct dutiable value and that same was rightly stated in the importer's entry.

The question here presented is a novel one, so far as this court is concerned, and no authority has been cited, nor have we found any, which seems to indicate that any strictly analogous issue has been the subject of judicial determination in any case prior to this. Appreciating its importance, this court, following its study, after argument thereon in December 1933, requested a reargument which was had in April 1934.

In the final analysis, the question is, What is the merchandise? Is it paper, or is it something else? Were the question before us one of classification rather than one of value, we apprehend there would be little occasion for contention as to its *per se* character. Surely it is classifiable under whatever may be the appropriate paragraph of the Tariff Act of 1930, as paper of its described kind. Assuming this to be so, may it properly be said that, while paper for the purpose of classification, it is something other than paper for the purpose of appraisement?

We are unable to reconcile ourselves to such a view. We think it must be treated as paper *per se*, this being its real nature and character.

It is to be remembered that the controversy here does not depend upon differences in width or size of the *paper* sold in Sweden, for domestic use, and that exported, but solely upon the difference in the *diameter* of the *rolls*. There is no claim here based upon the size, weight, or quality of the paper; the claim is based wholly upon the size of the roll into which the paper is fashioned for marketing.

It was said by this court in the case of *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, 25, T.D. 42714:

In view of the common meaning of the word "similar" and of the authorities cited, we are of opinion, and so hold, that if goods are made of approximately the same materials, are commercially interchangeable, are adapted to substantially the same uses, and are so used, ordinarily, they are similar * * *.

The importer or foreign manufacturer may not, by making a few changes in structure, or in giving the product a new name, or by restricting its sale to the American purchaser only, *ipso facto* remove his merchandise from * * *, the foreign value provision.

Since the record discloses that the paper sold for consumption in Sweden "is practically the same as that sold for exportation" and that it is everywhere used for wrapping, it is evident that the involved paper *per se* is made of "approximately the same materials", is "adapted to substantially the same uses" and is actually used as is the paper sold for consumption in the country from which exported.

It is urged, however, that the factor of commercial interchangeability alluded to in the *Massin* case, *supra*, is lacking. Apparently the sole basis for this contention is the difference *in price* of the *rolls*. The argument, therefore, would seem to assume as a premise that the merchandise *is* rolls of paper—not merely paper—which is the very issue that we are called upon to determine.

We think it sufficient to say that commercial interchangeability is not merely a matter of price, and the *per se* character of merchandise surely may not be determined solely upon the basis of its price or value.

It is not to be forgotten that the paper is not sold or offered for sale as "rolls of paper", but as paper, and that it is sold by weight, both domestically in Sweden and for export from Sweden. In all instances the quotation of unit prices is per kilo, packed.

It is our conclusion that it must be held as a matter of law that the merchandise involved had a foreign value at the time of its exportation, which value, if higher than the export value, is the legal dutiable value.

A second exceedingly complicated question in the case arises with respect to the correctness of the appraised value found by the local appraiser. The complexity in this regard seems to have grown largely out of the appraiser's effort to determine the packing charges and other elements required to be included in the total appraised value by the language of section 402 (c), Tariff Act of 1930, reading:

* * * including * * * all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

In arriving at these elements the appraiser, according to his testimony, when called as a witness on behalf of the Government, applied a certain formula and made calculations which the brief of appellee says "were no doubt actuated by equitable considerations and may have been mathematically correct but they were not legally correct."

The contention of appellee as to the calculations not being "legally correct", however, is based solely upon the theory that "the article

demanded is a roll of paper—not merely paper", an assertion of the brief being that—

The fundamental error made by the appraiser was in attempting to appraise the export rolls on the basis of the price of dissimilar merchandise.

In view of the fact that our conclusion as to the applicable law, with respect to the existence of a foreign value, differs from the contention made on behalf of appellee and from that of the tribunals of the United States Customs Court, it is our opinion that under the record as presented to us, we are not here called upon to inquire into the correctness of the local appraiser's appraisement or his methods of calculation.

In the appeal to the single judge, sitting in reappraisement, appellee contested the validity or correctness of the local appraisement, solely upon its theory of law as to the nonexistence of foreign value. When the Government appealed to the Customs Court its contention was that a foreign value existed which was the correct dutiable value and that same was correctly found by the local appraiser. Such is its contention here. The existence of a foreign value has been the chief bone of contention throughout. As indicated, we are of the opinion that a foreign value exists. What that value is, it is the function of the tribunals of the Customs Court to find, in the manner prescribed by the statute.

Accordingly, the judgment of the United States Customs Court is *reversed* and the cause is *remanded* with directions that there be included in the court's decision findings in accordance with the statute, including foreign value, which, if it be the higher, shall be taken as the final appraised value.

### DISSENTING OPINION

BLAND, Judge: I am of the opinion that the judgment of the trial court should be affirmed.

The majority opinion holds that there had been a foreign value established for the imported merchandise at bar. The opinion does not definitely state that the foreign value is established by the price at which *similar* merchandise is sold or by the price at which *such* merchandise is sold. But, since it discusses the question of commercial interchangeability alluded to in the *Massin* case, I take it that the majority holds that foreign value is proved by proving the value in the home market of similar paper rather than the value of the paper at bar.

I respectfully insist that this record shows that the paper imported is neither the same paper nor is it a similar paper, for appraisement purposes. The price at which the paper is sold for home consumption includes the cost of packing, which packing cost is a part of the selling

price of the goods and is at least 250 per centum more than the packing cost for export. The rolls are smaller and the proof is clear that it costs considerably more, proportionately, to produce them (on account of the changing of the rolls and other circumstances) than it does to produce the Jumbo rolls which are shipped to this country.

The appraiser recognized that it was unfair to accept the sale price of the small rolls, packed, as the dutiable value of the imported merchandise, but violated all appraisement precedents by estimating the cost of the packing for export by deducting from the packing charges for home consumption.

The majority opinion overemphasizes the contention that the importation is paper and not rolls of paper. The paper may be similar in texture, but, according to the record at bar, the imported article is certainly very different, for appraisement purposes, from the articles which are sold abroad. If the tables had been turned, and the Jumbo rolls had been sold abroad, and the small rolls sold for export at a higher price, it would be equally unfair to the Government that the value of the Jumbo rolls be taken as the value of the imported ones.

The majority have remanded the case with instructions to find a foreign value from the record which is before us. Under the majority opinion I know of no foreign value that can be found except the selling price of the small rolls which included the packing. To this sum, extra statutory items may be added. The appraiser obviously was of the impression that this would be an unfair value to place upon the imported merchandise, and the Government in this court has steadfastly urged that the appraiser's calculations, arriving at a lower packing charge than the packing charge for home consumption, was legal and proper. As far as I know, the Government has never asked at any time for a value to be placed upon the merchandise which equals the foreign selling price of the small rolls which included the high packing charges, and I cannot concur in the view that a paper which has such a different value from the imported paper, and which is different in use (to a large extent), and different in its merchantable qualities, should be regarded as "similar" for duty purposes. Since the opinion of the majority emphasizes the identity of the paper sold abroad with that sold here, it is difficult to understand why there is any need of a discussion of interchangeability and similarity.

For the reasons above set out, I respectfully dissent from the decision of the majority.