*Sharretts, Hillis & Paley* (*Howard C. Carter* of counsel) for the plaintiff.

*Charles J. Wagner*, Acting Assistant Attorney General (*Charles J. Miville*, special attorney), for the defendant.

OLIVER, Chief Judge: This appeal for reappraisement has been submitted for decision upon the following stipulation of counsel for the parties hereto:

IT IS HEREBY STIPULATED AND AGREED, by and between counsel, subject to the approval of the court, that the judgment and order of the court dated August 7, 1951 in the above entitled cause be vacated and set aside and that the stipulation filed June 8, 1951 be withdrawn.

IT IS FURTHER STIPULATED AND AGREED that the value or price at the time of exportation of the merchandise to the United States, at which such or similar merchandise was freely offered for sale to all purchasers in the principal markets of Belgium, for consumption in Belgium, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed, ready for shipment to the United States was the invoice unit prices, including carriage to Antwerp, cartons and packing and labor in packing, plus 4½% transmission tax, and that there was no higher export value.

IT IS FURTHER STIPULATED AND AGREED that this appeal be re-submitted on this stipulation.

On the agreed facts I find the foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, to be the proper basis for the determination of the value of the merchandise here involved, and that such values were the invoice unit prices, including carriage to Antwerp, cartons and packing, and labor in packing, plus 4½ per centum transmission tax.

Judgment will be rendered accordingly.

INTRA-MAR TRANSPORT CORP., FORMERLY GONDRAND TRANSPORT CORP. *v*. UNITED STATES

**No. 8070.**—Entered at New Orleans, La.
Entry Nos. 973; 974.

(Decided December 13, 1951)

*Brooks & Brooks* (*Frederick W. Brooks* and *Thomas J. McKenna* of counsel) for the plaintiff.

*Charles J. Wagner*, Acting Assistant Attorney General (*Harold L. Grossman* and *Chauncey E. Wilowski*, special attorneys), for the defendant.

EKWALL, Judge: A quantity of hard candies in glass flasks, packed in cartons, was exported from Cuba and entered at the port of New Orleans, La., in December 1946. Entry was made at the invoice

price of 11 cents per pound, which price was advanced by timely amendment of the entries to 15 cents per pound. The appraiser found a value of $8 per carton, net, packed, less certain enumerated nondutiable items, less cost of American containers.

It is claimed on behalf of the plaintiff that the proper value is the entered value of 15 cents per pound which, it is alleged, represents export value as defined in section 402 (d) of the Tariff Act of 1930.

In support of its claim, plaintiff introduced an affidavit of one Gustave V. Balsinde, director general of Central San Ramon, S. A. of Mariel, Pinar del Rio, and of Havana, Cuba, the manufacturer of the merchandise involved. (This was marked exhibit 1.) The Government offered and there were received into evidence as exhibits 2, 3, and 4, reports of a customs agent and of a Treasury representative. Judge Cole, before whom the case was originally heard and submitted, after a consideration of the evidence before him, found that the record as presented failed to support the statement in exhibit 1 as to a sale of the "same" merchandise for export to the United States, and, further, that said affidavit was too indefinite to enable him to arrive at a positive conclusion on the question of similarity. Therefore, in order to further the ends of justice, he ordered the case restored to the calendar so that an opportunity might be given both parties litigant to present further proof on that issue (Reap. Dec. 7744).

When the case was heard by this member of the court, plaintiff offered and there was received in evidence as exhibit 5 a second affidavit of the said Gustave V. Balsinde and the Government introduced another report of a Treasury representative (exhibit 6), each presenting additional evidence on the issue of similarity.

In the first affidavit of Mr. Balsinde (exhibit 1), he stated that the instant merchandise was sold by him to one Jose M. Arago at a price of 11 cents per pound f. o. b. Havana. At the time of these sales, November 1946, he freely offered the "same" candy at the same price, in the same quantities (the usual wholesale quantities) in Cuba. Further, he stated that at about the time of these shipments (November 25 and 26, 1946), he sold the "same" candy for export to the United States to Green Bros. of Miami, Fla., at a price of 15 cents per pound f. o. b. Havana.

Government's exhibit 2, being the report of Customs Agent Thomas O. McLendon, noted that Jose M. Arago on January 29, 1947, stated in answer to questions by a customs official, that in August or September 1946, he agreed to furnish hard candies to Camp-Bordelon Wholesale Candy Co. of Houston, Tex., from his firm, Central San Ramon, at 11 cents per pound f. o. b. Havana. The contract for this sale was made in his name although he had a third ownership in Central San Ramon and was vice president and general manager of that

concern. In fulfillment of this contract, there were shipped about 700,000 or 800,000 pounds of candy, which were entered at the ports of New Orleans, La., and Houston, Tex. There is an indication in the record that the candies were sold by Central San Ramon to Mr. Arago because he agreed to make the entries for the purchasers, Camp-Bordelon. Mr. O. F. Bordelon on February 11, 1947, stated to a customs official that in August 1946 he had accepted Mr. Arago's offer to sell to Camp-Bordelon hard candy at 22½ cents per pound f. o. b. Houston, duty and all expenses paid. On October 25, 1946, Mr. Bordelon had an irrevocable letter of credit issued in favor of Mr. Arago covering a purchase of hard candy at $8 per carton. In a later interview with a customs official on April 21, 1947, Mr. Arago stated that he had been confused on January 29, 1947, and wished to correct certain statements he had made at that time. He confirmed the agreement as testified to by Mr. Bordelon and admitted that the terms and prices received from Camp-Bordelon were incorrectly stated on the consular invoice. He gave as his reason for indicating on said invoice that he was the purchaser, the fact that he did not hold an export license in Cuba and was unable to declare that he was the seller and shipper. He admitted that in making this misrepresentation he was in error.

Government's Exhibit 3, a report of Treasury Representative Dillon of Havana, Cuba, under date of June 11, 1947, states that an examination of the records of Central San Ramon failed to show any sales or offers to sell for export to the United States to any purchasers other than Mr. Arago. However, Mr. Dillon subsequently obtained information from the American consulate that Central San Ramon sold to Green Brothers, Miami, 2,540 cartons, four-fifth pound bags lemon drops per carton, net weight 50,800 pounds, at a price of 15 cents per pound f. o. b. Havana. This order was accepted on December 23, 1946.

Government's exhibit 4, a report by the same Treasury representative, under date of March 31, 1947, discloses that Mr. Arago, while admitting that he has a financial interest in Central San Ramon, S. A., claimed that in the instant transaction the relationship between himself and that concern was that of buyer and seller. He explained that sales of hard candy are made outright to him at 11 cents a pound f. o. b. Havana. Mr. Arago admitted to Mr. Dillon that all of the consular invoices wherein he is shown as the purchaser, with addresses in various cities in the United States, are erroneous in that they do not reflect the name of the actual purchaser nor the price and terms agreed upon. Mr. Arago also admitted that whereas San Ramon, S. A., is shown as the seller in the invoices he (Arago) is actually the seller and shipper and Camp-Bordelon Wholesale Co. is the purchaser.

On the question of export value, Mr. Arago stated to the Treasury representative that no price lists or catalogs were issued; that in order to establish the business, prices were based upon 11 cents per pound net, f. o. b. Havana; that the merchandise is freely offered for sale and sold to all purchasers without restrictions regarding the quantity purchased or class of buyer; and that the company does not fix or exercise any control over the price for resale. The principal market is in Havana, but the usual wholesale quantity could not be determined in the absence of sales records.

As to foreign value, Mr. Arago stated to the Treasury representative that the hard candy sold in the home market for home consumption is identical to that sold for export, and that identical merchandise is freely offered for sale and sold to all purchasers in the home market, without restrictions as to the class of buyer or quantity purchased; that the manufacturer's prices are not fixed or controlled nor does he fix or control the price at which his customers resell the merchandise. The terms are f. o. b. factory, Mariel, Cuba, and no discount is granted for prompt payment nor is a commission paid or received on sales in the home market. The principal market is Mariel, Pinar del Rio, Cuba, and the price is not controlled by the quantity purchased.

The second affidavit of Mr. Balsinde, received as exhibit 5 on rehearing, reiterates that the hard candy in glass flasks sold at 11 cents per pound f. o. b. Havana, and the lemon drops in bags sold at the rate of 15 cents per pound f. o. b. boat, Havana, were commercially the same; that they were all made of approximately 99.5 per centum sugar of the same quality; and that the remaining materials used were coloring and flavoring matters of a small quantity and slight cost, from which he concludes that the lemon drops and the Cuban hard candies were all made of approximately the same materials at approximately the same cost of production and were commercially interchangeable as to price.

Exhibit 6, introduced on behalf of the Government, consists of a report of Treasury Representative Dillon under date of January 31, 1950, which gives the result of an interview with Mr. Balsinde in which the latter stated that the candy packed in glass jars consisted of sugar, flavoring, and coloring, but that the method of manufacture is different in that the candy, after cooking, is placed in 29″ vacuum pans and permitted to become almost dry, after which it is taken to a hot room, and from there to a cold room. It is packed in glass jars immediately after hardening "in order to prevent any humidity." Mr. Balsinde stated to Mr. Dillon that the difference in price between the bulk hard candy and the hard candy in glass jars here involved was due to labor costs in the process of manufacture. He explained

that his factory could produce 30,000 pounds of bulk in the same length of time that it would require to produce five or six thousand pounds of the hard candy packed in glass jars.

Upon this record, we must determine the value of the imported merchandise. Both parties litigant apparently agree that there is a foreign value and also an export value and that the export value is higher. (Section 402 (d), Tariff Act of 1930.) It is contended on behalf of the plaintiff that such value is 15 cents per pound, based upon a sale to Green Bros. of Miami, Fla., of what it contends is the same or similar candy. The Government contends the proper export value is $8 per carton, net packed, less certain enumerated nondutiable items, less cost of American containers, which is the price at which the instant merchandise was sold to Camp-Bordelon.

Plaintiff assumed the burden not only of disproving the value found by the appraiser, which carries with it a statutory presumption of correctness (28 U. S. C., 1948 revision, sec. 2633), but also of establishing the correctness of the claimed value. On the record, I am unable to find that plaintiff has sustained this burden. Certainly, the merchandise has not been proven to be identical, for although the ingredients may be the same, the record shows that the method of manufacture is different and also the method of packing. Nor do I find evidence of similarity under the decisions. See *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T. D. 42714; *United States* v. *Kraft Phenix Cheese Corp. et al.*, 26 C. C. P. A. (Customs) 224, C. A. D. 21; *United States* v. *F. Vietor & Achelis*, 17 C. C. P. A. (Customs) 412, T. D. 43864. The court is unable to agree with the conclusion of Mr. Balsinde as set forth in exhibit 5 that the lemon drops and the Cuban hard candies are commercially the same, where the method of manufacture is not shown to be the same, and the packing and cost of production of the candy in glass jars is higher due to the labor costs involved in its manufacture.

On the record before me, I find that the plaintiff has failed to overcome the presumption of correctness attaching to the values found by the appraiser in each case.

I therefore find and so hold that the values of the merchandise are the values found by the appraiser, which represent export values. Judgment will be issued accordingly.