B. A. McKenzie & Co., Inc., et al. *v.* United States (No. 5008) [1]

United States Court of Customs and Patent Appeals, July 20, 1960

---

[1] C.A.D. 748.

*Barnes, Richardson & Colburn* (*Hadley S. King* and *Norman C. Schwartz* of counsel) for appellants.

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon, Chief*, Customs Section (*Daniel I. Auster* and *Samuel D. Spector*, trial attorneys, of counsel) for the United States.

[Oral argument April 7, 1960, by Mr. King and Mr. Spector]

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[2]

MARTIN, Judge, delivered the opinion of the court:

 This appeal is from a judgment of the Customs Court, First Division (A.R.D. 103), affirming the judgment of a single judge, sitting in reappraisement, sustaining the appraiser's valuation based on the cost of production of certain rifles manufactured in Sweden by Husqvarna Vapenfabriks Aktiebolag. The Appellate Division of the Customs Court considered the consolidated record provided by the appellants in this case. The single judge stated that the only difference in the two appeals was in the fact that only two of the three rifles involved in one were involved in the other, and that the ports of entry were different.

Appellants asserted below, and claim here, that their proofs show a foreign value to exist for the merchandise. Section 402(c) provides:

*Foreign Value.*—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

This case presents a rather unusual situation wherein importers are attempting to prove that the rifles have values *higher* than the value at which they were appraised. The reason for this is that under the provisions of paragraph 365, rifles valued at over $25 but not over $50 are assessed at $5 each and 22½% ad val. (T.D. 51802) while those appraised at more than $50 are dutiable at 16¼% ad val. (T.D. 52739).

In attempting to demonstrate that rifles "similar" to those imported were freely offered for sale in Sweden, appellants introduced testimony and several exhibits before the trial judge of the Customs Court. Among the exhibits were:

(1) A Husqvarna rifle (Exh. 1), alleged to be illustrative of the imported merchandise with the single exception that two of three models were different calibers.

---

[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell*, pursuant to provisions of Section 294(d), Title 28, United States Code.

(2) A Brno rifle (Exh. 2), alleged to be similar "in the sense of section 402 to Exhibit 1."

(3) An affidavit (Exh. 3) comparing a Brno rifle sold in Sweden with "Husqvarna sporting rifles" also sold in Sweden. This affidavit is also relied upon by appellants to establish statutory similarity of the Brno rifle referred to therein to the imported rifles.

The only rifle values of record are those of the Brno rifle (Exh. 3) during 1951, $65.71 for the first 4 months of 1951 and $72.42 for the remainder of the year, and the appraised cost of production of the imported Husqvarna rifle, $43.15.

The single judge sitting in reappraisement found with respect to the Husqvarna (Exh. 1) and Brno (Exh. 2) rifles that:

Both have bolt action, and are five-shot-repeater, sporting rifles, of Mauser type, with sporting stock and killing power. The safeties and sights are the same (R. 22). Both rifles have the same general use, that is, they are guns which are sporting rifles.

A number of differences were also pointed out. The court stated that similarity for appraisement purposes was not established by showing that the two rifles were Mauser action sporting guns because "The purchaser of a sporting gun would usually take into consideration not only action, but such performance features as, to mention a few, accuracy, range, weight, how the rifle handles, type of sport to be engaged in, and price," and concluded that such factors must also be considered in determining commercial interchangeability insofar as it affects statutory similarity.

The Appellate Division stated:

We think the evidence offered may fairly be said to have established that (1) the Brno [Exh. 3] rifles offered for sale for home consumption in Sweden, and (2) the Husqvarna rifles offered for sale for home consumption in Sweden [Exh. 3], and (3) the imported Husqvarna [Exh. 1] rifles all responded to the following description:

They were all Mauser-type, five-shot, center-fire, bolt action rifles, having sporting sights and stocks and pistol grips, and with barrels of approximately the same length and size. Further, the evidence established that, from a *value* standpoint, differences in caliber of rifles of such description is immaterial, i.e., that while the difference in caliber would affect the personal choice of the purchaser of the rifles, it would not affect the value.

The court agreed with the single judge that the similarities between the rifles were insufficient to establish that they were "similar" within the meaning of section 402(c).

Then turning to Exhibit 3, which indicates that Husqvarna as well as Brno rifles were sold for home consumption in Sweden in 1951, the court stated:

* * * it was incumbent upon them [the importers] either to establish the market value or price of both under the terms of the statute, and, in that case, if the market values or prices were different, to establish which was *more* similar to

the rifles under appraisement, or to establish that one of the two makes was not offered for sale for home consumption in Sweden under the conditions specified in the statute.

Appellants contend that the court should not consider the Husqvarna rifles referred to in Exhibit 3 in determining similarity but rather should limit itself to determining whether the Brno rifle mentioned in Exhibit 3 freely offered in Sweden is similar to the imported Husqvarna rifles. As to whether those rifles are "similar" appellants argue that:

The *Heinz*[3] case clearly points the way for determination by this court that as a matter of law [Appellants' footnote omitted], the undisputed facts showing numerous vital similarities between the Brno sold in Sweden and the imported Husqvarna, the two rifles are similar within the meaning of section 402(c).

The Government principally argues that the evidence of record is insufficient to establish statutory similarity between the imported rifles and any other rifle and, as such, the appraiser's presumptively correct valuation must prevail.

---

[3] *H. J. Heinz Company* v. *United States*, 43 CCPA 128, C.A.D. 619. In the *Heinz* case certain tomato pulp was imported into the United States from England. The only tomato pulp available for home consumption in England was agreed by the parties to be an inferior grade. Although the imported pulp would have been acceptable for home consumption in England, the home consumption pulp was not acceptable for importer's purposes. As such the two grades were not mutually interchangeable for all purposes.

The imported merchandise was appraised on a constructive cost of production (Sec. 402(f)) in England. Appellant contended alternatively that a foreign value (Sec. 402(c)) existed or that the cost of production in France, the country of production of the imported pulp, was the proper basis upon which to value the goods. It argued further that there was no substantial evidence to support the constructive cost of production. With respect to the latter, this court found "no evidence whatsoever" to support it.

This court in holding that foreign value was the proper basis upon which to appraise the imported pulp stated:

In the *Wecker* case, *supra,* a relatively liberal interpretation of the term "similar" was given, as noted above. Applying this criterion to the instant case it is our opinion that if a person desiring tomato pulp of the Heinz quality could not obtain it, he would of necessity have to regard as a substitute the English home consumption pulp which is of "approximately the same price and will perform the same functions, is capable of the same use, and may be substituted therefor * * *." We think that the English home consumption pulp is "similar" to the Heinz pulp, in the words of the *Wecker* case, *supra,* "* * * notwithstanding the price, the methods of construction, and the component materials may be somewhat different; but for all utilitarian purposes, one is a substitute for the other. * * *"

In the *Massin* case, *supra,* the court set forth the following criterion:

* * * if goods are made of *approximately* the same materials, are commercially interchangeable, are adapted to the same uses, and are so used, ordinarily they are similar within the meaning of section 402(b) * * * [Italics added.]

This criterion was adopted in the *Scharf* case, *supra,* as discussed in detail below. Applying this criterion to the present case, it can be seen that the Heinz pulp and the English home consumption pulp "* * * are made of approximately the same materials, * * * are adapted to the same uses, and are so used * * *."

\* \* \* \* \* \* \*

In view of the foregoing determinations made by our court relative to the meaning of the term "similar" as it appears in the tariff act, we are of the opinion, for the foregoing reasons, that the imported tomato pulp is "similar" to the English home consumption tomato pulp and should have been appraised accordingly. As we interpret the pertinent portions of section 402, *supra,* it is, in our opinion, far more logical to appraise the imported merchandise on the basis of the cost of the "similar" English home consumption tomato pulp notwithstanding the difference in cost between the two than to base the valuation on a *constructive* cost of production which is inherently based on speculative and hypothetical factors.

We agree with appellants that the appraiser in adopting the cost of production as the proper basis upon which to determine the value of the importations must have concluded that no facts existed upon which foreign value could be predicated. See 19 U.S.C. 1402(a)(3). That being so, it can also be presumed that he found that no "such or similar" rifles to those imported were "freely offered for sale" or sold in Sweden. Since appellants have attacked the presumed correctness of the appraiser's findings only as to the Brno rifles, they may rely on those findings with respect to everything not disputed. As such it is unnecessary for appellants to show that the Husqvarna rifles referred to in Exhibit 3 are less "similar" in a statutory sense to the imported Husqvarnas than are the Brnos, contrary to the holding of the lower court. Under these circumstances appellants can rely upon the position of the appraiser and endeavor to prove foreign value by introducing evidence of the sale or offer of sale in Sweden of the alleged similar rifles, the Brno rifles.

The only issue before this court is whether appellants have established foreign value of the importations by the evidence introduced involving the Brno rifles (Exh. 2 & 3).

At the outset of this discussion it must be remembered that we are dealing with items whose every feature is important to the particular sportsman. We shall first turn our attention to Exhibit 2. Aside from the fact that Exhibit 1 has a single trigger and Exhibit 2 a double trigger, which difference has been explained to our satisfaction,[4] and aside from the many similarities between them noted by the appellants' witnesses, an examination of these two rifles reveals some very significant differences. The stock of Exhibit 1 is made of arctic beech and has an oil finish, while the stock of Exhibit 2 is made of walnut and has a lacquer finish. The widths of the stocks are different, that of Exhibit 1 being much wider and bulkier. The front and the rear sights are constructed differently. Exhibit 2 has an extended cheek rest while Exhibit 1 is without this feature. The bolt handles are constructed differently. There are also obvious differences in the overall craftsmanship of the two rifles. Furthermore, no price or value has been established for the Brno rifle of Exhibit 2 which fact is significant in and of itself.

Although appellants' witnesses testified that the apparent difference in the length of the barrel and the caliber of the rifles would not affect their prices, these specific differences, as well as the other differences noted, are undoubtedly important to the individual sportsman and as such are significant in determining ▇ the question of commercial interchangeability, which is one of the factors to be

---

[4] One of appellants' witnesses testified the double trigger Brno rifle was the only kind available in the United States. However, Exhibit 3 reveals that a Brno rifle sold in Sweden has a single trigger assembly.

considered in ascertaining whether the merchandise is similar within the purview of section 402(c). *Meadows, Wye & Co. (Inc.) et al.* v. *United States*, 17 CCPA 36, T.D. 43324; *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T.D. 42714.

We are not satisfied that appellants have proven that the Brno rifle of Exhibit 2 is "similar" to the imported rifles, and therefore no foreign value can be predicated on Exhibit 2 alone.

Exhibit 3 (the affidavit) recites numerous similarities between "Husqvarna sporting rifles" and a Brno sporting rifle. It states (in part) :

During the year 1951 I [affiant] was familiar with rifles manufactured in Sweden by Husqvarna Vapenfabriks Aktiebolag, having personally sold some of those rifles. The Brno sporting rifle referred to above, [5] and of the Husqvarna sporting rifles were similar in their design, material and use in regard to the following features:

| Brno | Husqvarna |
|---|---|
| Mauser type, bolt action | Mauser type, bolt action |
| Half stocked with pistol grip, oiled finish | Half stocked with pistol grip, oiled finish |
| Single trigger assembly | Single trigger assembly |
| Barrel, 600 mm long and 15½ mm diameter at the muzzle with 25 mm diameter before the receiver | Barrel, 600 mm long and 15½ mm diameter at the muzzle with 28 mm diameter before the receiver |
| Cartridge, center fire. | Cartridge, center fire. |
| Action accommodates five cartridges. | Action accommodates five cartridges. |
| Caliber, 8 x 57 | Caliber, 8 x 57, 30.06 and 9.3 x 62. Also .220 and .270 |

This affidavit is deficient in a number of respects. First, we have no way of knowing whether the "Husqvarna sporting rifles" described therein are the same as the importations. Second, there has been no means provided us whereby the Brno rifle of Exhibit 2 can be related to the Brno of Exhibit 3. Appellants themselves have stated that the Brno of Exhibit 2 corresponds "in some respects *only* to the description in Exhibit 3, *infra*, of the Brno riffle sold in Sweden." [Emphasis ours.] Therefore Exhibit 2 is of no assistance to us in ascertaining whether the Brno rifle of Exhibit 3 is or is not similar to the imported rifles. Third, the general statements as to the transactions involving the Brno rifle of Exhibit 3 will not suffice for us to make a determination as to whether this rifle was "freely offered for sale to all purchasers in the principal markets of the country from

---

[5] The affidavit with respect to this states :

During the year 1951 sales of Brno rifles were made by * * * [the firm for which affiant is sales manager] * * *.

\* \* \* \* \* \* \*

Included among the rifles sold by * * * [that firm] were Brno sporting models * * * imported into Sweden by * * * [that firm]. [Emphasis ours.]

which * * * [the importations were] * * * exported in the usual wholesale quantities and in the ordinary course of trade, * * *."

The price range of Exhibit 3 is $65.71 to $72.48, whereas the appraiser found the cost of production value of the importations to be $43.15 per rifle, differentials of 52% and 68% respectively. That price disparity is significant in itself.

Finally, the differences we have observed between Exhibits 1 and 2 are not obviated by Exhibit 3. Other features also important to a sportsman, such as the width of stock, type of cheek rest, bolt handle construction, quality of gunmetal, and overall craftsmanship, are not compared for us.

The deficiencies in the proofs with respect to Exhibit 3 are as fatal to it as were the proofs relied upon to show the similarity of Exhibit 2 to the imported rifles. Considering this affidavit and the record as a whole, we do not believe that appellants have established that either of the Brno rifles are "similar merchandise" within the purview of section 402(c).

Although appellants rely mainly upon the *Heinz* decision to maintain their position, we find that case not to be sufficiently in point to be controlling here because the factual situations are entirely different. Furthermore, there appeared to be no deficiencies in that record with reference to all factors necessary for a determination under section 402(c). This record is deficient in many respects as has been previously pointed out.

For the foregoing reasons the decision of the United States Customs Court is *affirmed*.